**SAMUEL J. MULLEY, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2007-071

Supreme Court of the Virgin Islands

June 23, 2009

KYLE R. WALDNER, ESQ., Smock & Moorehead, St. Thomas, USVI, *Attorney for Appellant.*

PAMELA TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, DOLACE MCLEAN, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and CARROLL III, *Designated Justice.*[1]

## OPINION OF THE COURT

(June 23, 2009)

PER CURIAM. Appellant Samuel Mulley (hereafter "Mulley") requests that this Court overturn his convictions on the grounds that (1) the

---

[1] Associate Justice Ive Arlington Swan is recused from this matter. The Honorable James S. Carroll III has been designated in his place pursuant to title 4, section 24(a) of the Virgin Islands Code.

evidence is insufficient to sustain a conviction for unauthorized possession of ammunition; (2) the trial court erred in denying Mulley's motion to exclude evidence; (3) the prosecutor's remarks during closing argument constituted impermissible vouching; and (4) the trial court improperly admitted expert testimony from a lay witness. For the reasons that follow, we shall affirm Mulley's convictions except his conviction for unlawfully possessing ammunition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2006, in the vicinity of the Cyril E. King Airport on St. Thomas, Virgin Islands, Mulley allegedly drove alongside a school bus operated by Joseph Brown (hereafter "Brown") and fired gunshots into the bus. The police subsequently arrested Mulley, and on June 26, 2006, the People of the Virgin Islands (hereafter "People") filed a six-count criminal information charging him with attempted first degree murder, first degree assault, carrying of an unlicensed firearm during commission of attempted first degree murder, carrying of an unlicensed firearm during commission of first degree assault, unauthorized possession of ammunition, and reckless endangerment in the first degree.

On November 3, 2006, Mulley filed a motion *in limine* to exclude all evidence of and references identifying Brown's vehicle as a school bus as well as to remove references to the school bus from the information. After considering the People's November 29, 2006 opposition and Mulley's December 8, 2006 reply, the Superior Court, in a January 2, 2007 order, denied Mulley's motion to exclude this evidence and to modify the information. Mulley's trial began on May 15, 2007, and the jury convicted Mulley on all counts on May 16, 2007. Mulley filed a renewed motion for judgment of acquittal on May 23, 2007 and a notice of appeal on May 25, 2007. The trial court denied Mulley's motion for judgment of acquittal on June 4, 2007, and entered its final judgment sentencing Mulley on September 25, 2007.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). The order

sentencing Mulley was entered on September 25, 2007, and Mulley's notice of appeal was filed on May 25, 2007. "A notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." V.I. S. Ct. R. 5(b)(1). Accordingly, the notice of appeal was timely filed. *See id.*

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). When reviewing a defendant's challenge of the sufficiency of the evidence, this Court views all evidence in the light most favorable to the government. *See Latalladi v. People*, Crim. No. 2007-090, 2009 V.I. Supreme LEXIS 10, at *13, [WL] (V.I. Feb. 11, 2009). "Appellate reversal on the grounds of insufficient evidence should be confined to cases where the failure of the prosecution is clear. The evidence need not be inconsistent with every conclusion save that of guilty, so long as it establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt." *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1996). To the extent its decision is not based on legal precepts, a trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Gov't of the Virgin Islands v. Albert*, 241 F.3d 344, 347 (3d Cir. 2001).

## B. Mulley's Conviction for Unauthorized Possession of Ammunition Requires Reversal

■ Mulley argues, citing the United States Court of Appeals for the Third Circuit's recent decision in *United States v. Daniel*, 49 V.I. 1169, 518 F.3d 205 (3d Cir. 2008),[2] that the evidence is insufficient to sustain his conviction for unauthorized possession of ammunition because the second element of this offense — that Mulley was unauthorized to possess ammunition — "cannot be satisfied since current Virgin Islands law does not establish a licensing requirement for ammunition or 'provide any specific procedure by which possession of ammunition may be licensed or otherwise authorized.'" (Appellant's Br. at 10 (quoting

---

[2] *See also Gov't of the Virgin Islands v. Turbe*, 304 Fed. Appx. 76, [WL] (3d Cir. 2008) (following *Daniel*).

*Daniel*, 518 F.3d at 209)). Mulley is correct that title 14, section 2256 of the Virgin Islands Code, which codifies the offense of unlawful possession, does not establish a process through which one can obtain a license to possess ammunition or otherwise explain under what circumstances an individual is or is not authorized to possess ammunition. Because the Third Circuit correctly observed that a court should be "loath to construe these provisions to create an offense relating to unlawful possession of ammunition not enunciated by the Virgin Islands legislature," *Daniel*, 518 F.3d at 208-09 (citing *United States v. Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989 (1954)), Mulley cannot be held criminally responsible for possessing ammunition in the absence of a licensing process. Accordingly, this Court holds that the evidence is insufficient to sustain Mulley's conviction for this crime.[3]

## C. The Trial Court Did Not Err in Denying Mulley's Motion *In Limine*

██ Mulley, citing Federal Rule of Evidence 403, contends that the trial court should not have denied his motion *in limine* to exclude all evidence of and reference to the school bus because the unfair prejudice to Mulley substantially outweighed the evidence's probative value. However, this Court has recently held that the Superior Court may not invoke Superior Court Rule 7 to apply the Federal Rules of Evidence to proceedings to the exclusion of the Uniform Rules of Evidence, codified at 5 V.I.C. §§ 771-956. *See Phillips v. People*, S. Ct. Crim. No. 2007-037, 2009 V.I. Supreme LEXIS 16, *23, [WL] (V.I. Mar. 12, 2009). Because title 5, section 885 of the Virgin Islands Code covers the same subject matter as Federal Rule of Evidence 403, this Court shall apply section 885 in lieu of Rule 403. This statutory rule of evidence reads as follows:

> Except as in this chapter otherwise provided, the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue

---

[3] At oral arguments, the People attempted to distinguish the instant case from *Daniel* and *Turbe* by arguing that Mulley used the ammunition to commit other crimes. The crime Mulley was charged with, however, proscribes the unlawful *possession* of ammunition, not the unlawful *use* of ammunition. Consequently, demonstrating at trial that Mulley used ammunition to commit a crime would not relieve the People of their duty to prove beyond a reasonable doubt that Mulley was not authorized to possess ammunition.

prejudice or of confusing the issues or of misleading the jury, or (c) unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered.

5 V.I.C. § 885. However, since the pertinent clause of the federal rule contains virtually the same language as section 885,[4] reliance on Federal Rule of Evidence 403 in this case is harmless and "judicial decisions interpreting the federal [rule] shall assist this Court in interpreting the same clause found in our local statute." *People v. Pratt*, 50 V.I. 318, 322 (V.I. 2008) (citing *Brown v. People*, 49 V.I. 378 (V.I. 2008)).

■■■■ Both section 885 and Rule 403, by their own terms, require a trial court to engage in a balancing analysis that weighs the evidence's probative value against the danger for unfair prejudice.[5] *See Diehl v. Blaw-Knox*, 360 F.3d 426, 430 (3d Cir. 2004). "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some

---

[4] Rule 403 reads as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403.

[5] In his brief, Mulley argues that the trial court did not properly conduct a proper balancing test because its January 2, 2007 order denying Mulley's motion *in limine* stated that "the evidence is not unfairly prejudicial" without articulating the specific reasons. (J.A. at 33.) Appellate courts, when faced with a trial court that did not appear to conduct a balancing analysis for its evidentiary order, have traditionally remanded the matter to the trial court so that it may perform the appropriate test. *See Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 128 S. Ct. 1140, 1147, 170 L. Ed. 2d 1 (Feb. 26, 2008) (reversing and remanding appellate court's decision when appellate court, which had acknowledged that the trial court's order was unclear, nevertheless assumed trial court applied an impermissible per se rule and then performed, on appeal, the balancing test the trial court should have performed); *United States v. Pelullo*, 14 F.3d 881, 889 (3d Cir. 1994) (remanding matter to trial court so that it may "conduct a balancing analysis, and state its reasons on the record for admitting or excluding" evidence of defendant's prior conviction).

The instant matter, however, is distinct from *Mendelsohn* and *Pelullo*, in that the trial court, by expressly concluding that the evidence was not unfairly prejudicial, clearly performed the balancing analysis contemplated by section 885, rather than a *per se* rule or a different test. Furthermore, Mulley's counsel agreed at oral arguments that remand is not necessary for this Court to review the trial court's order. Thus, although this Court strongly encourages trial courts to articulate with specificity the reasons for all parts of their section 885 decisions in order to facilitate meaningful appellate review, we hold that the trial court's January 2, 2007 order is sufficiently clear to enable appellate review without remand.

concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). Because "all probative evidence is prejudicial to a criminal defendant . . . to warrant exclusion . . . its probative value must be slight in comparison to its inflammatory nature." *United States v. Garner*, 281 Fed. Appx. 571, 575 (7th Cir. 2008) (citing *United States v. Gougis*, 432 F.3d 735, 743 (7th Cir. 2005)).

██ ██ Here, any prejudice to Mulley resulting from admission of the photographs of and references to the school bus was clearly not outweighed by the probative value. Although Mulley argues that "[t]he fact that the alleged victim was driving a school bus as opposed to another type of vehicle had no bearing on the guilt of Mr. Mulley with respect to the crimes charged," (Appellant's Br. at 14), the type of vehicle Mulley drove is highly relevant to the reckless endangerment charge. To obtain a conviction for reckless endangerment in the first degree, the People had to prove that Mulley "recklessly engage[d] in conduct in a *public place* which create[d] a grave risk of death to another person." 14 V.I.C. § 625(a) (emphasis added). The statute defines "public place" as "a place to which the general public has a right to resort; but a place *which is in point of fact public rather than private*, and visited by many persons and usually accessible to the public." 14 V.I.C. § 625(c)(2) (emphasis added). School bus transportation is a public service provided by the Government of the Virgin Islands to transport children to and from the schools which they attend, and to which special traffic rules apply. *See* 17 V.I.C. §§ 101-104; 20 V.I.C. §§ 495(h), 544(h). Courts have therefore held that a school bus constitutes a "public place" even though a private vehicle does not. *Compare In re Neal*, 6 Misc. 2d 751, 164 N.Y.S.2d 549, 552 (N.Y. Child Ct. 1957) (holding that a school bus is a public place) *with Atkins v. State*, 451 N.E.2d 55, 56 n. 1 (Ind. Ct. App. 1983) (explaining that case law holds that passengers in private vehicles are not in a public place). The information's language strongly implied that the People intended to proceed under a theory that the school bus constituted the "public place," and the evidence in this case disclosed that, at the time the incident occurred, Brown was driving the school bus to pick up students from the Kirwan Terrace School. (Trial Tr. vol. 2 at 44; J.A. at 77.) Accordingly, the fact that the victim's vehicle was a school bus was highly probative, and eliminating any references to the school bus would

have impermissibly precluded the People from proving reckless endangerment under one of its charged theories. *Cf. United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (holding that "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be. . . .").[6]

■ In addition, practical considerations play a role in determining whether a trial court should exclude evidence on non-constitutional grounds. *See Gemstar Ltd. v. Enrst & Young*, 185 Ariz. 493, 917 P.2d 222, 235-36 (1996) ("We agree with the trial court that, because of the similarities of the claims and evidence between the two cases, precluding mention of the *Wauro* case would have been impractical.") For instance, eliminating all references to the school bus would have, for all intents and purposes, prevented the People from introducing the pictures of the clearly identified school bus with bullet holes, which clearly had probative value with respect to all charges, and were necessary to both depict the crime scene and establish Mulley's state of mind. *See United States v. Treas-Wilson*, 3 F.3d 1406, 1410 (10th Cir.1993) (holding that crime scene photographs, though graphic, were relevant to determination of defendant's intent or state of mind). Furthermore, excluding all references to the school bus would have been impractical given the large number of witnesses who previously gave statements describing the school bus and who would have been required to avoid describing the vehicle while testifying truthfully under oath. *See Sun Valley Potato Growers, Inc., v. Texas Refinery Corp.*, 139 Idaho 761, 86 P.3d 475, 482 (2004) (affirming trial court's denial of motion *in limine* because "it was impractical to try and redact key portions of the agency agreement . . . so that the jury would not hear them and then turn around and try to instruct them on the law without them knowing what the actual agreement between the parties was.") (internal quotations omitted). Consequently, the trial court did not abuse its discretion when it denied Mulley's motion *in limine*.

---

[6] Furthermore, Mulley's counsel greatly reduced any potential prejudice by expressly asking John Nadeau whether there were any children on the school bus at the time of the shooting. (J.A. at 100.)

## D. The Prosecutor's Impermissible Closing Remarks Do Not Require Reversal

Mulley further argues that certain statements the prosecutor made during closing arguments — which were not objected to at trial — constituted impermissible vouching that requires reversal. As Mulley acknowledges, "[t]he review of any non-contemporaneous objection to a prosecutor's remarks during trial is subject to plain error standard of review." (Appellant's Br. at 3 (quoting *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998)).

 "Plain error is defined as those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *Phillips*, 2009 V.I. Supreme LEXIS 16, at \*9, [WL] (quoting *Sanchez v. Gov't*, 34 V.I. 105, 921 F. Supp. 297, 300 (D.V.I. App. Div. 1996)); *see also Puckett v. United States*, ___ U.S. ___, 129 S. Ct. 1423, 1425, 173 L. Ed. 2d 266 (Mar. 25, 2009) (summarizing the four prong test for plain error review). Improper remarks by the prosecution during closing arguments are not *per se* grounds for a new trial. *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (overruling *United States v. DiLoreto*, 888 F.2d 996 (3d Cir. 1989)). Rather an appellate court must "consider the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the defendant's conviction." *Id.* (citing *United States v. Gambino*, 926 F.2d 1355, 1365 (3d Cir. 1991), *cert. denied sub nom. Mannino v. United States*, 501 U.S. 1206, 111 S. Ct. 2800, 115 L. Ed. 2d 973 (1991)); *see also Puckett*, 129 S. Ct. 1423, 1433.

 "Improper 'vouching' occurs where a prosecutor suggests that she has reasons to believe a witness that were not presented to the jury." *United States v. Rivas*, 493 F.3d 131, 137 (3d Cir. 2007). Here, the People's attorney at trial improperly stated during closing arguments that Brown "doesn't have a criminal record" because "[h]e drives a school bus" and that "if he did have a criminal record, [defense] counsel would have pointed it [out] to [the jury]." (Trial Tr. vol. 3, 131, May 16, 2007; J.A. at 358.) The prosecutor also improperly vouched for Brown when he stated that he did not think that Brown "appear[s] to be the person that would fabricate . . . a vicious falsehood" that Mulley was his assailant because Brown is "the God father to somebody's child" and that such a lie would be "far-fetch[ed]." (Trial Tr. vol. 3 at 132; J.A. at 359.)

*See United States v. Harris*, 471 F.3d 507, 512-13 (3d Cir. 2006) (stating that prosecutor's remark that police witnesses would not jeopardize their careers by lying in court, to the extent it invoked information not in the record, was improper); *Gov't of the V.I. v. Charleswell*, 30 V.I. 394, 24 F.3d 571, 576 (3d Cir. 1994) (holding that it is improper for prosecutor to remark about defendant's failure to raise an insanity defense and state the acquittal would not help defendant cope with his alleged stress).

██ ██ These remarks, although clearly improper, would not constitute plain error if the trial court provided an instruction that cured or lessened the prejudicial affect of the remark and the evidence of Mulley's guilt was substantial. *See United States v. Mares*, 402 F.3d 511, 516 (5th Cir. 2005) (holding that prosecutor's remarks "were not sufficiently prejudicial to cast serious doubt on the correctness of the jury's verdict" because "[t]he district court did remind the jury . . . that attorneys' comments are not evidence and that they should base their decision solely on the evidence admitted in the case" and "the Government presented substantial evidence of Mares' guilt.") (citations omitted). In this case, the trial judge orally instructed the jury that "[t]he evidence which you are to decide what the facts are consist[s] of the sworn testimony of the witnesses . . . the exhibits that have been received into evidence, and any facts that the attorneys have agreed to or stipulated to," and that "[c]ertain things are not evidence," including "[t]he arguments and statements by lawyers," for "[w]hat they say in their opening statement, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence." (Trial Tr. vol. 3 at 180-81; J.A. at 407-08.) Additionally, the trial judge told the jury that "[i]f the facts as you remember them from the evidence differ from the way the lawyers have stated them, your memory of them controls." (Trial Tr. vol. 3 at 182; J.A. at 409.) Thus, although the judge did not issue an immediate specific curative instruction, its general instruction reduced any prejudice from the improper remarks in the People's closing argument. *See Puertas v. Overton*, 168 Fed. Appx. 689, 699-700 (6th Cir. 2006) (holding that defendant is not prejudiced by prosecutor's impermissible remarks during closing arguments when "the court gave a general instruction at the close of evidence reminding jurors to consider only properly admitted evidence.")

██ ██ Furthermore, courts have described the evidence against a defendant as "overwhelming" when the crimes alleged put the defendant

"in the continuous view of witnesses" who are able to identify the defendant at trial. *United States v. Reed*, 522 F.3d 354, 360, 380 U.S. App. D.C. 329 (D.C. Cir. 2008). Here, the criminal acts took place in the afternoon, on a busy public highway, and multiple witnesses — including Brown (Trial Tr. vol. 2, 42-49, May 15, 2007; J.A. at 75-82), Leroy Robinson (Trial Tr. vol. 2 at 108-16; J.A. at 141-48), Cheryl Maduro (Trial Tr. vol. 2 at 122-30; J.A. at 155-63), Tynesia Anderson (Trial Tr. vol. 2 at 140-47; J.A. at 173-80), and Rhonda Forbes (Trial Tr. vol. 2 at 160-63; J.A. at 193-96) — each observed the incident and identified Mulley as the shooter. Because of this strong independent evidence of Mulley's guilt, the prosecutor's remarks, even if improper, cannot constitute plain error. *See United States v. Lew*, 875 F.2d 219, 223-24 (9th Cir. 1989) (holding that vouching does not rise to level of plain error when strong additional evidence of defendant's guilt is presented, even when defense has challenged the credibility of government's witnesses).

## E. The Trial Court Did Not Improperly Admit Expert Testimony

▆▆▆▆▆▆ Finally, Mulley argues that the trial court abused its discretion when it admitted, over his counsel's objections on different grounds,[7] Detective David Monoson's (hereafter "Monoson") testimony (and related photographs) pertaining to bullet trajectory, which Mulley characterizes as "expert testimony . . . under the guise of lay opinion." (Appellant's Br. at 20.) According to Mulley, Detective Monoson's testimony constituted impermissible opinion testimony by a lay witness in violation of Federal Rule of Evidence 701 and the trial court, if it wished

---

[7] While Mulley argues on appeal that this testimony and photographs constituted unqualified expert testimony, his counsel only objected on the specific grounds of lack of foundation and prejudice. (J.A. at 250-51.) Accordingly, this issue may, at best, only be reviewed for plain error. *See United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990) ("Thus, a party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, but also by making the wrong specific objection . . . . Because Gomez failed to make a [section 911] objection below, we review the admission of the . . . testimony for plain error.") Nevertheless, it is also arguable that making the wrong objection may result in a complete waiver of appellate review of an evidentiary decision. *Cf. United States v. Rose*, 538 F.3d 175, 177-82 (holding, after construing the history of FED. R. CRIM. P. 12 and surveying other jurisdictions, that waiver, rather than plain error review, is appropriate when evidence in a criminal trial is not challenged before the trial court) (collecting cases). However, it is not necessary for this Court to resolve this question at this time, for the outcome would remain the same whether reviewed for plain error or deemed waived.

to admit such testimony, should have qualified Detective Monoson as an expert witness pursuant to Federal Rule of Evidence 702. However, as discussed in a preceding subsection, the Uniform Rules of Evidence, rather than the Federal Rules of Evidence, govern the admissibility of evidence in criminal proceedings in the Superior Court. Consequently, this Court must apply title 5, section 911 of the Virgin Islands Code, which pertains to expert and lay witness opinion testimony, to this dispute. This statute states, in full:

> (1) If the witness is not testifying as an expert his testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clear understanding of his testimony or to the determination of the fact in issue.

> (2) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based on facts or data perceived by or personally known or made known to the witness at the hearing and (b) within the scope of the special knowledge, skill, experience or training possessed by the witness.

> (3) Unless the judge excludes the testimony he shall be deemed to have made the finding requisite to its admission.

> (4) Testimony in the form of opinions or inferences otherwise admissible under this chapter is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact.

5 V.I.C. § 911.

■■■ Unlike the correlating Federal Rule of Evidence 701, title 5, section 911(1) does not have a third requirement that lay testimony may not be based on scientific, technical, or other specialized knowledge. However, section 911(2) nevertheless indirectly incorporates the same standard for determining when testimony is expert:

> If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based on facts or data perceived by or personally known or made known to the witness at the hearing and *(b) within the scope*

*of the special knowledge, skill, experience or training possessed by the witness.*

5 V.I.C. § 911(2) (emphasis added). *See Ritter v. People*, S. Ct. Crim. No. 2007-087, 2009 V.I. Supreme LEXIS 31, *17 (V.I. May 13, 2009). Thus, consideration under either rule would reach the same result. Courts, however, are split as to whether testimony pertaining to bullet trajectory is based on specialized knowledge. *Compare United States v. Beckford*, 211 F.3d 1266, *6 (4th Cir. 2000) (table) (holding that detective's testimony not based on specialized knowledge because his findings regarding bullet trajectory were "rationally based on his perceptions and helpful to a clear understanding of his investigation and observations.") *with Benzel v. Houston*, 547 F. Supp. 2d 1007, 1016 (D. Neb. 2008) ("[T]he State presented expert testimony . . . regarding bullet trajectory"); *Pethtel v. West Virginia State Police*, Civ. No. 5:06CV87, 2008 U.S. Dist. LEXIS 12540, *6, [WL] (N.D. W.Va. Feb. 19, 2008) (treating testimony pertaining to bullet trajectory as "expert testimony" premised on "scientific, technical, or other specialized knowledge").

▇▇▇ Nevertheless, it is not necessary for this Court to determine whether Detective Monoson's statements rose to the level of expert testimony because no error would have occurred even if Detective Monoson testified as an expert. Notably, Mulley does not assert that the trial court could not have made the requisite findings to qualify Detective Monoson as an expert, but only argues that "[t]he trial court abused its discretion by admitting such testimony without qualifying Detective Monson as an expert first."[8] (Appellant's Br. at 22.) Section 911(3) expressly states that, "[u]nless the judge excludes the testimony he shall be deemed to have made the finding requisite to its admission." Consequently, the trial court, by allowing Detective Monoson to testify as to the bullet's trajectory, implicitly made the findings necessary to qualify him as an expert in the event that such qualification was a necessary prerequisite to admissibility. *See Harpole v. Paeschke Farmes, Inc.*, 267 Ore. 592, 518 P.2d 1023, 1026 n. 5 (1974) (applying Rule 56(3) of the Uniform Rules of Evidence, which is identical to 5 V.I.C. § 911(3));

---

[8] Likewise, Mulley does not allege that the People failed to comply with Federal Rule of Criminal Procedure 16(a)(1)(G) by not identifying Detective Monoson as an expert and providing counsel with a written summary of his testimony.

*Hubbard v. Havlik's Estate*, 213 Kan. 594, 518 P.2d 352, 362 (1974) (applying Kansas statute containing language identical to 5 V.I.C. § 911(3)).

## III. CONCLUSION

Since the People have failed to prove a requisite element of the offense of unlawful possession of ammunition, this Court is compelled to reverse Mulley's conviction on that count of the information. Because the People were required to establish that Mulley recklessly engaged in conduct in a public place to obtain a conviction for reckless endangerment in the first degree, and eliminating all references to the school bus would have been impractical, the trial court did not abuse its discretion when it denied Mulley's motion *in limine*. Furthermore, neither the prosecutor's closing remarks nor the trial court's admission of Detective Monoson's testimony constituted plain error. Consequently, this Court reverses the trial court's judgment with respect to the unlawful possession of ammunition charge but affirms as to all other counts.