**DEIBY BILLU, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2010-0049

Supreme Court of the Virgin Islands

September 21, 2012

455

456

457

Kᴇʟᴇ C. Oɴʏᴇᴊᴇᴋᴡᴇ, Eꜱǫ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

TERRYLN M. SMOCK, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, Chief Justice; CABRET, Associate Justice; and SWAN, Associate Justice.

## OPINION OF THE COURT

CABRET, *Associate Justice*. Following a jury trial, Deiby Billu was convicted of attempted murder in the first degree, assault in the third degree, and two counts of unauthorized possession of a firearm during the commission or attempted commission of a crime of violence. He now appeals his convictions, arguing that the Superior Court erred in admitting certain evidence, that the People presented insufficient evidence to convict him on any of the charges, that the People erroneously charged him with assault in the third degree, and that the People and the Superior Court improperly omitted an element of attempted first degree murder in the Information and final jury instructions. For the reasons that follow, this Court affirms Billu's convictions.

## I. FACTS AND PROCEDURAL BACKGROUND

On the morning of March 11, 2009, Kareem Charleswell and Khalif Leader were standing in front of Kirwan Terrace apartment complex when two men driving by in a blue vehicle shot them. Leader died from the gunshot wounds, but Charleswell survived. As a result of the shootings, the People charged Deiby Billu by Amended Information with first and second degree murder, attempted murder, first and third degree assault, and five counts of unauthorized use of a firearm during the commission of a crime of violence.[1]

---

[1] Specifically, the People charged Billu with: count one, first degree murder in violation of V.I. CODE ANN. tit. 14, §§ 921, 922(a)(1); count two, unauthorized use of an unlicensed firearm during the commission of a first degree murder in violation of 14 V.I.C. § 2253(a); count three, second degree murder in violation of 14 V.I.C. §§ 921, 922(a)(2); count four, unauthorized use of an unlicensed firearm during the commission of a second degree murder in violation of 14 V.I.C. § 2253(a); count five, first degree assault in violation of 14 V.I.C. § 295(1); count six, unauthorized use of an unlicensed firearm during the commission of a first degree assault in violation of 14 V.I.C. § 2253(a); count seven, attempted first degree murder in violation of 14 V.I.C. §§ 921, 922(a)(1), 331; count eight, unauthorized use of an unlicensed firearm during the commission of an attempted first degree murder in violation of 14 V.I.C. § 2253(a); count nine, third degree assault in violation of 14 V.I.C. § 297(2); and

459

During the pre-trial investigation, the People identified and spoke to two eyewitnesses — Kareem Charleswell and Makeem Ublies. Specifically, Charleswell met with law enforcement officers on March 13, 2009 and then again on March 31, 2009. During the first interview, Charleswell stated that he was at Kirwan Terrace when he noticed a blue Ford vehicle approaching. As the vehicle neared, Charleswell observed Billu in the driver's seat. Charleswell also saw an assault rifle protruding from the window. When he saw the gun, he turned to run, but shots were fired and he was hit. Charleswell did not recognize the passenger in the car, but he recognized Billu, who was wearing a red shirt and had his hair braided.

Later that month, law enforcement officers interviewed Charleswell again. At this meeting, police presented Charleswell a photo array of eight men, asked if he recognized any of the men, and if he did, how he knew the person or persons whom he recognized. Charleswell identified Billu as the person who shot him and initialed the picture of Billu to identify him as the shooter.

Like Charleswell, Ublies met with law enforcement officers twice following the shooting, first on March 12, 2009 and then again on March 13, 2009. At the first interview, Ublies stated that he was at Kirwan Terrace with Charleswell and Leader the morning of the shooting. The three men were talking, when Ublies decided to leave and walked to a nearby bus stop. As he was waiting at the bus stop, Ublies saw a blue Ford rental car traveling toward Kirwan Terrace. As the vehicle approached, Ublies observed Billu in the passenger's seat. Ublies then saw a machine gun and a pistol come out of the vehicle and fire as it passed by where he had left his two friends in Kirwan Terrace. After seeing the shots fired, Ublies ran over to his two friends and held Leader's head as he died of his wounds. Ublies repeated the same story when law enforcement officers interviewed him the next day.

At Billu's trial, the People called Charleswell and Ublies to testify. Both testified that they had no recollection of making their previous statements, or identifying Billu as the shooter. As a result, the People introduced evidence of Charleswell's and Ublies's pre-trial statements to the police to link Billu to the homicide. Charleswell's and Ublies's oral

---

count ten, unauthorized use of an unlicensed firearm during the commission of a third degree assault in violation of 14 V.I.C. § 2253(a).

statements, which formed the entire basis of the People's case, were allowed into evidence over Billu's objection to their admissibility.[2]

On April 21, 2010, the jury returned a guilty verdict on the attempted murder, assault in the third degree, and related unauthorized firearm possession counts and a not guilty verdict on all other counts. On June 14, 2010, the Superior Court entered its judgment and commitment, sentencing Billu to twenty years imprisonment for attempted murder in the first degree and fifteen years for unauthorized possession of a firearm during the commission or attempted commission of a crime of violence, merging the remaining offenses, and ordering that the sentences run concurrently. On May 24, 2010, Billu filed a timely notice of appeal.[3]

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over timely appeals from final judgments of the Superior Court. 4 V.I.C. § 32(a). A judgment in a criminal case is a final order from which an appeal may lie. *Brown v. People*, 49 V.I. 378, 380 (V.I. 2007).

Generally, the standard of review in examining the trial court's application of law is plenary. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). In particular, we exercise plenary review over a trial court's interpretation of statutes and challenges based on insufficient evidence. *Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009); *Myers v. Derr*, 50 V.I. 282, 287 (V.I. 2008). However, our review of the trial court's admission of evidence is only for abuse of discretion, unless the decision involves application of a legal precept, in which case this Court exercises plenary review. *Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008). A trial court abuses its discretion when it makes a decision that "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Petrus v. Queen*

---

[2] The court did not allow the subsequent reports the officers generated regarding Charleswell's and Ublies's oral statements to be admitted as evidence.

[3] Supreme Court Rule 5(b)(1) currently states that "[a] notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." The Rule featured the same language when the notice of appeal was filed in this case in May of 2010. Therefore, even though Billu filed his notice of appeal before the Superior Court's Judgment was entered into the docket, it is considered timely. *See Chinnery v. People*, 55 V.I. 508, 513 & n.1 (V.I. 2011) (applying version of Rule 5(b)(1) in effect prior to November 2, 2011 amendment).

*Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012) (quoting *Stevens*, 55 V.I. at 552).

## III. DISCUSSION

Billu argues that (1) pursuant to Federal Rule of Evidence 801(d)(1) the Superior Court erred in admitting evidence of Charleswell's identification of Billu and Ublies's statements that Billu committed the crimes at issue; (2) pursuant to Federal Rule of Evidence 403, the Superior Court erred in admitting the statements of Ublies and Charleswell, because they were more prejudicial than probative; (3) the People presented insufficient evidence to convict Billu; (4) the Legislature did not intend for assault in the third degree with a deadly weapon to include an assault committed by means of a firearm; and (5) the People, in the information, and the Superior Court, in its jury instructions, erred by omitting one of the elements of attempted first degree murder — that the attempted shooting was the same type as an attempted killing by poison, lying in wait, torture, or the detonation of a bomb. We consider each argument in turn.

### 1. Ubiles's and Charleswell's prior inconsistent statements were properly admitted.

Both Billu and the People spend significant portions of their respective briefs discussing the application of Federal Rule of Evidence 801(d)(1). Additionally, the Superior Court applied this rule in the admission of Charleswell's identification of Billu and Agent Purkey's recollection of Ublies's statement. Rule 801(d)(1) provides that, "[a] statement . . . is not hearsay [if] . . . [t]he declarant testifies and is subject to cross examination about a prior statement, and the statement: (A) is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition . . . [or] (C) identifies a person as someone the declarant perceived earlier."[4] However, Rule 801(d)(1) does not control the admissibility of prior inconsistent statements in the Superior Court. Instead, 14 V.I.C. § 19 addresses the admissibility of prior inconsistent statements in criminal

---

[4] This wording of Rule 801(d)(1) became effective December 1, 2011. Billu brought his appeal before this stylistic change took effect, but that does not change the application of the rule here.

cases in the Superior Court of the Virgin Islands.[5] Section 19 of title 14 states:

> Evidence of a prior statement, oral or written, made by a witness is not made inadmissible by the hearsay rule if the prior statement is inconsistent with his testimony at a hearing or trial. After the witness has been given an opportunity at such hearing to explain or deny the prior statement, the court shall allow either party to prove that the witness has made a prior statement, oral or written, inconsistent with his sworn testimony. Such prior statement shall be admissible for the purpose of affecting the credibility of the witness or for proving the truth of the matter asserted therein if it would have been admissible if made by the witness at hearing or trial. Each party shall be allowed to cross-examine the witness on the subject matter of his current testimony and the prior statement.

Accordingly, for a prior inconsistent statement to be admissible under section 19, a party must show that (1) a witness made a prior statement inconsistent with his current trial testimony, (2) the witness must be given an opportunity to explain or deny the prior statement, (3) the prior statement must have been otherwise admissible if it had been made by the witness at the hearing or trial, and (4) each party must be allowed to cross-examine the witness on the subject matter of his current testimony and the prior testimony.

In this case, both Charleswell and Ublies were given an opportunity to explain or deny their prior statements, in which they identified Billu as the shooter. Those statements were inconsistent with their trial testimony, since both witnesses denied knowing the identity of the shooter at trial. Moreover, Agent Arthurton's statements as to what Charleswell said,

---

[5] As this Court noted in *Williams v. People*, 56 V.I. 821, 828 n.6 (V.I. 2012), this Court has never decided whether the Legislature's adoption of the Federal Rules of Evidence — which prohibit the admission of prior inconsistent statements for the truth of the matter — was intended to impliedly repeal 14 V.I.C. § 19. See *Fontaine v. People*, 56 V.I. 571, 586 n.9 (V.I. 2012) (noting the question, but not resolving it, because the trial court had applied the Uniform Rules of Evidence instead of the Federal Rules). However, just like the appellant in *Williams*, Billu failed to raise this as an issue in the trial court or on appeal. Because there is no binding authority finally resolving the question, even if the trial court erred when it admitted of the testimony pursuant to section 19, such an error could not be plain, and therefore would not be reversible. *Williams*, 56 V.I. at 826 n.6.

along with Agent Purkey's statements as to what Ublies said, would have been admissible if Charleswell and Ublies had made them at trial. Finally, each party was allowed to cross-examine Charleswell and Ublies regarding their trial testimony and prior statements. Thus, both statements were admissible under 14 V.I.C. § 19. Accordingly, even though the Superior Court erred in applying Federal Rule of Evidence 801 to the admission of Charleswell's and Ublies's prior inconsistent statements, that error was harmless because the Superior Court would have arrived at the same outcome had it correctly applied the proper statute.

## 2. The Superior Court did not plainly err by failing to suppress Charleswell's and Ublies's prior statements *sua sponte* under Federal Rule of Evidence 403.

█ Billu next argues that the statements by Charleswell and Ublies were inadmissible under Federal Rule of Evidence 403, which the Superior Court is bound to follow in this instance under section 15(b) of Act No. 7161 of the Virgin Islands Legislature. However, because Billu failed to raise this issue to the Superior Court, we review only for plain error. *See Hightree v. People*, 55 V.I. 947, 954 (V.I. 2011). To find a plain error, this Court must determine that there was (1) an error, (2) which was plain, (3) which affected substantial rights, and (4) which we find seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Id.* (quoting *Nanton v. People*, 52 V.I. 466, 475 (V.I. 2009)).

█ Under Rule 403, relevant evidence may be excluded only if "its probative value is substantially outweighed by a danger of . . . unfair prejudice."[6] By definition, all relevant evidence will be prejudicial to one of the parties. *See United States v. Dillon*, 532 F.3d 379, 391 (5th Cir. 2008). As such, Rule 403 does not block all prejudicial evidence, but instead vests the trial court with the discretion to exclude evidence it deems to be unfairly prejudicial where that unfair prejudice substantially outweighs its probative value. *Id.* at 391. The advisory committee's notes to Rule 403 explain that " '[u]nfair prejudice' within [this] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." As we previously explained,

---

[6] This wording of Rule 403 became effective December 1, 2011. Billu brought his appeal before this stylistic change took effect, but that does not change the application of the rule here.

"[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Mulley v. People*, 51 V.I. 404, 411-12 (V.I. 2009) (quoting *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997)); *see also Krepps v. Gov't of the V.I.*, 47 V.I. 662, 674 (D.V.I. App. Div. 2006) (explaining that "unfair prejudice is measured by the degree to which a jury responds negatively to some aspect of the evidence unrelated to its tendency to make a fact in issue more or less probable.") (internal citations omitted).

██ Here, Billu argues that the two eyewitness statements previously identifying Billu as the shooter should have been excluded because of their extreme prejudicial effect and lack of probative value. Although these statements are prejudicial, perhaps extremely so, their probative value is not substantially outweighed by an *unfair* prejudice, as it does not "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged," as contemplated by the advisory committee's notes to Rule 403. *See Mulley*, 51 V.I. at 411-12. As we explained in *Mulley*, "[b]ecause all probative evidence is prejudicial to a criminal defendant . . . to warrant exclusion . . . its probative value must be slight in comparison to its inflammatory nature." *Id.* at 412 (citing *United States v. Garner*, 281 Fed. Appx. 571, 575 (7th Cir. 2008)) (internal quotation marks omitted). In contrast, the probative value of the statements at issue here is high, and the risk of unfair prejudice slight, if it exists at all, as this evidence is specific to the offense charged and lacks an inflammatory nature that would cause the factfinder to find guilt on an impermissible ground. Therefore, because the probative value of the statements made by Ublies and Charleswell was not substantially outweighed by the danger of unfair prejudice, the Superior Court did not err in admitting the statements into evidence.

### 3. The People presented sufficient evidence of Billu's participation in these crimes.

Billu argues that the People presented insufficient evidence to convict him. In all of his sufficiency arguments, Billu argues that the People rested its case on the out-of-court statements made by Charleswell and Ublies and that those statements lacked credibility. He first asserts that the testimony of Agent Arthurton and Agent Purkey regarding these

statements was unreliable, contending that the statements were not in conformity with the United States Department of Justice's manual "Eyewitness Evidence: A Guide for Law Enforcement." Billu also argues that "[t]he initial non-identification by Charleswell may indicate [the] investigator's unintentional cues toward Billu as the reason for Charleswell's identification."[7] (Appellant's Br. 19.) Finally, Billu makes a blanket assertion that "Ublies and Charleswell are unreliable." (Appellant's Br. 20.)

A sufficiency challenge is not a vehicle to relitigate credibility arguments that were unpersuasive to a jury. *See Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009) ("When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government."). In other words, this Court is "not at liberty to substitute [its] own credibility determinations for those of . . . the jury." *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009). Rather, our only concerns in a sufficiency challenge are whether any " 'rational trier of fact could have found the defendant[] guilty beyond a reasonable doubt and [that] the convictions are supported by substantial evidence.' " *Latalladi*, 51 V.I. at 145. Therefore, the "evidence 'does not need to be inconsistent with every conclusion save that of guilt' in order to sustain [a] verdict," and instead, we are required to affirm "so long as [the evidence] establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt." *Id.* at 145. *See also Williams*, 56 V.I. at 835-36 ("When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government. We are prohibited from weighing the evidence or determining the credibility of witnesses. And if any rational trier of fact could have found

---

[7] We note that not only is this argument based on the credibility of the witnesses, and thus a jury issue, but it also lacks support in the record. To the extent that Billu is arguing that Charleswell failed to identify Billu in his initial contact with police, he is contradicted by the record. Agent Arthurton testified that, when Charleswell initially met with police on March 13, 2009, he specifically identified Billu as being the shooter. Additionally, neither Charleswell nor Agent Arthurton testified to anything that would support the claim that the investigators provided Charleswell with "unintentional cues" during the identification process.

the essential elements of the crime beyond a reasonable doubt, we must affirm the conviction.") (internal quotation marks and citations omitted).

■ In this case, the People presented sufficient evidence to support a conviction. On March 13, 2009, Charleswell identified Billu as the person who shot him on March 11, 2009. Likewise, on March 31, 2009, Charleswell picked Billu out of a photo array as the shooter and driver of the blue Ford vehicle from which the bullets were fired. Similarly, on March 12, 2009, Ublies said he saw Billu in a blue Ford rental car from which the occupants "start[ed] shooting" at Charleswell and Leader with a machine gun and pistol as the car passed by them. The next day, Ublies repeated the same story. This evidence, when viewed in the light most favorable to the People, is more than sufficient to allow a rational trier of fact to return a conviction. *See Latalladi*, 51 V.I. at 145; *see also Stevens*, 52 V.I. at 308 ("Thus, [the victim's] identification of Stevens as the shooter, which was credited by the Superior Court, and obviously the jury as well, provided a sufficient basis to deny Stevens's challenge to the weight of the evidence."). Billu notes that Charleswell and Ublies contradict one another with respect to the question of where Billu was sitting in the Ford Taurus. However, these minor discrepancies do not justify interfering with the jury's determination on the questions of the reliability and credibility of the witnesses' prior statements.

### 4. Title 14 section 297 encompasses assaults committed with a firearm.

Billu next argues that his conviction for assault in the third degree with a deadly weapon under 14 V.I.C. § 297 must be vacated because the People accused him of committing the assault with a firearm. Billu argues that assault in the third degree with a deadly weapon was intended by the Legislature to criminalize assaults with "knives, stones, or shoes" but does not reach cases, like this one, where the defendant is accused of assaulting another with a firearm. (Appellant's Br. 28.) According to Billu, the Legislature intended that assaults committed with a firearm be prosecuted under 14 V.I.C. § 2253 instead of section 297, as section 2253 specifically penalizes the possession of firearms. Billu bases his argument on this Court's opinion in *Miller v. People*, 54 V.I. 398, 403-07 (V.I. 2010) and the maxim of statutory construction *expressio unius est exclusio alterius*, which means " 'to express or include one thing implies the exclusion of the other.' " *Id.* at 404; *see also* BLACK'S LAW DICTIONARY

494 (9th ed. 2009) (same). Since section 2253 specifically includes firearms, while section 297 only mentions "deadly weapon[s]," Billu argues that *Miller* stands for the proposition that the Legislature only intended that he should be tried and convicted for a violation of section 2253. Billu's argument fails to persuade us.

██ ██ As we stated in *Miller*, the "starting point in interpreting a statute is its language, for if the intent of [the Legislature] is clear, that is the end of the matter." 54 V.I. at 403 (alteration in original, internal quotation marks omitted). *See also Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) ("In construing a statute, if the intent of the Legislature is clear, that is the end of the matter."). Section 297 and section 2253 do not overlap or conflict in the conduct they criminalize, and thus the Legislature could not have intended for section 2253 to replace section 297 for assaults with a firearm. Section 297 provides up to five years imprisonment for "[w]hoever . . . assaults another with a deadly weapon . . ." Section 2253, however, provides penalties for "[w]hoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm unauthorized possession of a firearm" with enhanced penalties for those who possess, bear, transport, or carry a firearm "during the commission or attempted commission of a crime of violence." Accordingly, section 297 criminalizes *assaults* with any kind of deadly weapon, while section 2253 criminalizes *unauthorized possession* of a firearm with enhanced penalties if a person possesses the firearm during any crime of violence.

██ It is clear that the Legislature intended for sections 297 and 2253 to work in tandem with one another where an unlicensed firearm is used to commit an assault and that section 297 was intended to encompass firearms as "deadly weapons." Section 2253 specifically states that its penalties for possession of a firearm are to be "in addition to the penalty provided for the commission of, or attempt to commit, the felony or crime of violence." 14 V.I.C. § 2253(a). The term "crime of violence" for the purposes of section 2253 specifically includes "assault in the third degree" as one of the crimes of violence that can serve as a predicate offense for the enhanced penalty. *See* 14 V.I.C § 2253(d)(1) (" 'Crime of violence' shall have the same definition as that contained in Title 23, section 451(e) of this Code."); 23 V.I.C. § 451(e) (defining crime of violence to include, among other things, "assault in the third degree."). If the Legislature did not intend for firearm assaults to be included within

section 297, this provision would be nonsensical, as under Billu's interpretation a third degree assault cannot be committed with a firearm, and could never serve to enhance a penalty under section 2253. We are compelled to construe the statutes at issue so as to avoid such "absurd consequences." *Farrell v. People*, 54 V.I. 600, 610 (V.I. 2011) (quoting *Gilbert*, 52 V.I. at 356).

 Accordingly, because the Legislature intended for assaults committed with a firearm to be prosecuted under both sections 297 and 2253, we reject Billu's argument that we must vacate his conviction under section 297 because he was accused of using a firearm in the commission of the assault.

### 5. The information and final instructions properly charged attempted first degree murder.

Billu argues that, under the Virgin Islands Code, a conviction of first degree murder for a willful, deliberate, and premeditated killing with a gun requires a factual finding that the killing was of "the same manner or substantially similar" to murder perpetrated by means of poison, lying in wait, torture or detonation of a bomb. (Appellant's Br. 12.) Billu contends that applying the principle of *ejusdem generis* to Title 14, section 922(a)(1) supports this conclusion. *Ejusdem generis* is "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." BLACK'S LAW DICTIONARY 594 (9th ed. 2009).

Title 14, section 922(a) states: "All murder which . . . is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other kind of willful, deliberate and premeditated killing . . . is murder in the first degree." Therefore, Billu argues, applying *ejusdem generis* to 14 V.I.C. § 922(a)(1), the phrase "or by any other kind of willful, deliberate and premeditated killing" must be construed to include only killings done in a manner similar to killings by poison, lying in wait, torture, or detonation of a bomb. Because this element was not proven at trial, Billu argues that his conviction must be vacated. We note that, because Billu never raised this argument before the trial court, we may only review it for plain error. *See Hightree*, 55 V.I. at 954 (defining plain error as (1) an error, (2) which was plain, (3) which affected substantial

rights, and (4) which we find seriously affects the fairness, integrity, or public reputation of the judicial proceedings).

■ ■ Nevertheless, we recently addressed this argument in *Codrington v. People*, 57 V.I. 176, 185 (V.I. 2012). In *Codrington*, we stated that because the language of 14 V.I.C. § 922 is clear and unambiguous there is no need to resort to other canons of statutory construction like *ejusdem generis. Id.* at 185. We explained:

> [T]he plain language of Section 922(a)(1) defines four specific methods of killing which are first degree homicide (poison, lying in wait, torture, and bombs), then provides that other killings, regardless of method, are also first degree murder when committed with a specific mindset. Because the statute lists four examples as specific ways to commit first degree murder and then states that "any other kind of willful, deliberate and premeditated" murder is also first degree murder, a murder accomplished through one of the four enumerated methods does not require a willful, deliberate, and premeditated showing . . . It is clear from a simple reading of the plain language of section 922(a)(1) that the Legislature intended to define all murder accomplished by the four enumerated examples — poison, detonation of a bomb, lying in wait, and torture — and any other murder, regardless of how the murder was accomplished, so long as the murder was willful, deliberate, and premeditated as first degree murder.

*Id.* at 185 (internal citations omitted).

However, Billu presents a new argument in support of his interpretation of section 922(a)(1) that was not raised in *Codrington*. Specifically, Billu argues that *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581, 170 L. Ed. 2d 490 (2008), stands for the proposition that not only does *ejusdem generis* apply to the otherwise plain language of section 922, but it also mandates that we interpret section 922 to require the jury to find that the killing in this case was done in a manner similar to killings by poison, lying in wait, torture, or detonation of a bomb.

In *Begay*, the United States Supreme Court concluded "New Mexico's crime of 'driving under the influence' falls outside the scope of the Armed Career Criminal Act's clause (ii) 'violent felony' definition." 553 U.S. at 148. In reasoning that driving under the influence was not a violent felony, the Court interpreted a clause stating that "a 'violent felony' . . . [includes

any crime that] '(ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another' " to mean that "the provision's listed examples — burglary, arson, extortion, or crimes involving the use of explosives — illustrate the kinds of crimes that fall within the statute's scope." *Id.* at 139-40, 142 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Based on that statutory interpretation, the Court concluded that "the examples [limit] the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *See id.* at 143. In other words, the "presence [of the examples] indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.' " *Id.* at 142 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)) (emphasis in original).

 Although the tenets of statutory construction applied to federal statutes by the U.S. Supreme Court may be highly persuasive, they do not bind this Court in its interpretation of statutes passed by the Virgin Islands Legislature. Assuming that this Court were to apply the methodology used by the U.S. Supreme Court in *Begay*, Billu's reliance on this case would still be misplaced. The interpretation of the statute at issue in *Begay* has no bearing on our analysis here due to distinctions in the plain language of the statutes. The U.S. Supreme Court found that the statute at issue in *Begay*, 18 U.S.C. § 924(e)(2)(B)(ii), was not meant by Congress to be all-encompassing, rejecting the argument that the statute applied to "*every* crime that presents a serious potential risk of physical injury to another." *Id.* at 142 (emphasis in original, internal quotation marks omitted).

 Part of this holding rested on the use of the word "otherwise" in the statute, which the Court found limited the clause to other crimes that are similar to those listed, but different with respect to the "way or manner" in which it produces the risk of physical injury. *Id.* at 144 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1598 (1961)). This presents a clear contrast to 14 V.I.C. § 922(a)(1), in which a listing of specific examples of prohibited acts is followed by the word "any," prohibiting "[a]ll murder which . . . is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by *any* other kind of willful, deliberate and premeditated killing." (emphasis added). By its definition, the word "any" denotes "one, some, or all . . . of whatever quantity." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (1993). The use of "any" indicates that the Legislature intended to encompass all killings

which are "willful, deliberate and premeditated," no matter how many different types there might be or what forms they may take. This difference in statutory language clearly distinguishes 18 U.S.C. § 924(e)(2)(B)(ii) and 14 V.I.C. § 922(a)(1).[8]

 In sum, because section 922(a)(1) defines first degree murder as, among other things, any kind of willful, deliberate, and premeditated killing, the Superior Court did not err by failing to require a finding that a killing accomplished with a firearm is similar to a killing accomplished by poison, lying in wait, torture, or a bomb.

## IV. CONCLUSION

Although the Superior Court erred in applying Federal Rule of Evidence 801(d)(1) to the admission of Charleswell's and Ublies's statements, that error was harmless. Additionally, the probative value of these statements was not substantially outweighed by the danger of unfair prejudice to Billu, the People presented sufficient evidence to support Billu's conviction, and the information and final instructions properly charged Billu with attempted first degree murder. Therefore, we affirm the Superior Court's June 14, 2010 judgment.

---

[8] Additionally, in *Codrington*, we explained that by listing some specific acts constituting first degree murder, the Legislature was not limiting the scope of the statute, but exempting the People from having to show that the act was "willful, deliberate and premeditated" in instances where a killing was carried out through "poison, lying in wait, torture, detonation of a bomb." 57 V.I. at 184.