**KEITH A. FRANCIS, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2012-0072

Supreme Court of the Virgin Islands

November 27, 2013

KELE C. ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(November 27, 2013)

CABRET, *Associate Justice.* Keith Francis appeals from the Superior Court's July 16, 2012 Judgment and Commitment, which adjudicated him guilty of two counts of unlawful sexual contact in the second degree. For the reasons that follow, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 24, 2011, the People charged Francis with two counts of first-degree unlawful sexual contact and two counts of second-degree unlawful sexual contact in relation to two incidents that occurred at Charlotte Amalie High School on February 12, 2011. At trial, D.F., a minor, testified that he arrived at the school gymnasium to play basketball with his friend, S.L., and saw Francis renumbering the lockers. When D.F.

followed Francis into a utility room — which also contained various sports items — Francis locked the door, walked towards D.F., and began to "feel up" his leg. (J.A. 82.) While D.F. pushed him away, Francis continued to reach up D.F.'s shorts, and D.F. fell to the floor while trying to resist. D.F. testified that Francis held him down, grabbed his penis, and later turned him over and began to squeeze and feel his buttocks. Although D.F. managed to grab a mop and hit him, Francis continued to restrain him, and told him to "let him do it just once" because it would "feel nice" and he "would have a good time . . . [a]nd . . . get hard off of it." (J.A. 89.) Eventually, Francis got off D.F., told him not to tell anyone, and D.F. went back to the gym to play basketball with S.L.

D.F. further testified that, approximately thirty minutes later, Francis came into the gym, said he would close it up, and offered him a soda. D.F. followed Francis into the concession room to get the drink, but Francis locked the door and began to approach him. D.F. and Francis began to struggle, and D.F. testified that after he fell to the floor, Francis held him down and felt up his leg, penis, and buttocks. Eventually, D.F. freed himself and rejoined S.L., whom he did not tell about either incident. S.L., however, testified that he had heard D.F. yelling for Francis to stop while they were in the concession room. Later that day, D.F. told his mother and father that Francis had molested him.

Francis provided a different account of these events at trial. He testified that he cooked chicken for himself that day, and he had yelled at D.F. when he took a piece of chicken from his plate. According to Francis, D.F. was sitting on a chair in the utility room when he entered it, and he tickled D.F. after D.F. refused to get out of the chair and leave the room. As to the second incident, Francis testified that D.F. had stolen a soda from the concession, that he struggled with D.F. and tickled him in order to try to get the soda back, and that he let D.F. have the soda after he began to cry. Francis categorically denied touching D.F. inappropriately. Two other school employees — Boyd Todman, a school monitor, and Pedrito Estrill, a physical education teacher — also testified as defense witnesses, and partially corroborated portions of Francis's testimony, but neither witness saw or heard what had happened in either the utility or concession rooms.

During closing arguments, the prosecutor told the jury that "an average male teenager will not lie about being molested by another male because of the shame, the stigma of being called an Auntie man [is not] something

any male teenager would want . . . ." (J.A. 456.) Before the prosecutor could complete the sentence, Francis objected. The Superior Court sustained the objection, struck the prosecutor's statement from the record, and instructed the jury to not consider the "Auntie man" or homosexual comments in their deliberations or with respect to their weighing of the evidence. In its final jury instructions, the Superior Court again emphasized that "arguments and statements by lawyers are not evidence," including opening and closing arguments. (J.A. 467.)

Ultimately, the jury acquitted Francis of two counts of first-degree unlawful sexual contact, but found him guilty of two counts of second-degree unlawful sexual contact. The Superior Court orally sentenced Francis to one year incarceration for each charge, to be served consecutively, and memorialized its pronouncement in a July 16, 2012 Judgment and Commitment.

## II. JURISDICTION

We have jurisdiction over this appeal pursuant to V.I. CODE ANN. tit. 4, § 32(a), which provides that "[t]he Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court." The Superior Court's July 16, 2012 Judgment and Commitment constituted a final judgment, and Francis filed a timely notice of appeal on August 3, 2012. Accordingly, we have jurisdiction over Francis's appeal. *Potter v. People*, 56 V.I. 779, 787 (V.I. 2012).

## III. DISCUSSION

Francis argues that the evidence was insufficient to support his convictions because the People did not establish that Francis was over eighteen years old at the time of the offense. He also asserts that the People improperly vouched for D.F. during closing arguments, denying him a fair trial. We address each argument in turn.

### A. Proof of Age

The offense of unlawful sexual contact in the second degree occurs when "[a] person over eighteen years of age . . . engages in sexual contact with a person not the perpetrator's spouse who is over thirteen but under sixteen years of age." 14 V.I.C. § 1709. Francis argues that the People failed to prove he was over eighteen years old when the incidents occurred. Specifically, Francis asserts that the People were required to

1078

prove his age through "a more objective recording such as his birth certificate." (Appellant's Br. 13.) Since Francis did not challenge the sufficiency of the evidence on this ground at the trial level, we review only for plain error. V.I.S.CT.R. 4(h); *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011).

 Francis's argument lacks merit. This Court has emphatically rejected the proposition that the People may only establish a defendant's age with documentary evidence. *See In re K.J.F.*, 59 V.I. 333, 342 (V.I. 2013) (holding that the testimony of the defendant's mother was sufficient to establish his age). Rather, age, like any other element, may be established entirely by circumstantial evidence, "so long as that circumstantial evidence is sufficient for a jury to infer" that element. *Galloway v. People*, 57 V.I. 693, 700 (V.I. 2012) (citing *Alfred v. People*, 56 V.I. 286, 293-94 (V.I. 2012) & *Codrington v. People*, 57 V.I. 176, 199 (V.I. 2012)). In this case, while the People did not provide any direct evidence of Francis's age, Todman testified that he had known Francis for "[a] very long time," or about "20 something" years, (J.A. 271), while Estrill testified that he knew Francis professionally for "between 15 and 20" years. (J.A. 308.) Moreover, Francis himself testified that he knew Estrill for fifteen to twenty years. Unquestionably, the jury could infer from this testimony that Francis was more than eighteen years old at the time of the offense. And, of course, the jury observed Francis throughout the trial — including during his testimony — and thus could assess his age simply by looking at him. *See, e.g., Barnett v. State*, 488 So. 2d 24, 25 (Ala. Crim. App. 1986) ("It is uniformly the rule that a defendant's physical appearance may be considered by the jury in determining his or her age." (quoting *State v. Lauritsen*, 199 Neb. 816, 261 N.W.2d 755, 757 (1978))); *State v. Lefante*, 97 A.2d 472, 477 (N.J. 1953) ("[T]he eyes of the jurors told them that the 53 year old defendant was of the age of sixteen or over." (internal quotation marks omitted)); *State v. Dorathy*, 132 Me. 291, 170 A. 506, 508-11 (1934) (collecting cases). Thus, the evidence was sufficient to establish Francis's age at the time of the offenses.

## B. Improper Remarks

Francis also contends that the prosecutor's comment during closing arguments constituted impermissible vouching and deprived him of his right to a fair trial. While acknowledging that the Superior Court

sustained his objection and promptly issued a curative instruction, Francis claims that these measures were not effective because they only addressed the "Auntie man" comment and not the preceding statement that "an average male teenager will not lie about being molested by another male." (Appellant's Br. 8.) According to Francis, the jury likely believed the statement because it carries the "imprimatur of the Government" and was thus "based on a well[-]founded well of knowledge" that came from "the vast human data accumulated by the government, one that . . . only the government is in a position to collect." (Appellant's Br. 11.)

 Like the Superior Court, we agree that these comments were unquestionably improper, in that the prosecutor invoked matters that were not a part of the record and sought to appeal to the jury's emotions and prejudices. *DeSilvia v. People*, 55 V.I. 859, 872 (V.I. 2012). However, "[i]mproper remarks by the prosecution during closing arguments are not per se grounds for a new trial." *Mulley v. People*, 51 V.I. 404, 414 (V.I. 2009) (citing *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995)). Rather, such prosecutorial misconduct will only warrant reversal if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process in light of the entire proceeding." *DeSilvia*, 55 V.I. at 873 (quoting *United States v. Morena*, 547 F.3d 191, 194 (3d Cir. 2008)). In making this determination, "an appellate court must 'consider the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the defendant's conviction.' " *Mulley*, 51 V.I. at 414 (quoting *Zehrbach*, 47 F.3d at 1264).

 Here, we cannot say that the prosecutor's comments were so egregious as to constitute a denial of due process. "[T]he statement was brief and isolated," and encompassed only a single sentence, which the Superior Court immediately struck from the record in its entirety and attempted to remedy by providing both an immediate curative instruction and a general instruction immediately prior to deliberations. *DeSilvia*, 55 V.I. at 873-74. As we have repeatedly held, we presume that jurors follow the instructions they are given, including curative instructions and admonitions of the kind given by the Superior Court in this case. *Ostalaza v. People*, 58 V.I. 531, 555 (V.I. 2013); *Augustine v. People*, 55 V.I. 678, 686 (V.I. 2011).

Moreover, although the People's case largely rested on D.F.'s credibility, even Francis admitted to physically touching D.F. in both the utility and concession rooms. Thus, the critical determination for the jury to make was whether Francis touched D.F. inappropriately. *Cf. Suarez v. Gov't of the V.I.*, 56 V.I. 754, 768 (V.I. 2012). Importantly, besides Francis and D.F., only one witness, S.L., observed either incident firsthand, and he testified to hearing D.F. yelling "stop, stop" and "[l]eave me alone" while in the concession room with Francis. (J.A. 158.) Therefore, the evidence against Francis, while not necessarily overwhelming, was sufficiently strong to dispel the notion that the jury convicted him simply because of the prosecutor's fleeting comment. *DeSilvia*, 55 V.I. at 874; *Mulley*, 51 V.I. at 415-16.

## IV. CONCLUSION

The People introduced sufficient evidence to establish Francis's age at the time of the offense. And while the prosecutor impermissibly vouched for D.F.'s credibility during closing arguments, the Superior Court's curative actions, when combined with the strength of the People's case, make clear that this comment did not affect the verdict. Accordingly, we affirm the July 16, 2012 Judgment and Commitment.