**CHERANCE MONELLE, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellant/Plaintiff**

S. Ct. Criminal No. 2013-0036

Supreme Court of the Virgin Islands

October 26, 2015

KELE ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, Chief Justice; CABRET, Associate Justice; and SWAN, Associate Justice.

## OPINION OF THE COURT

### (October 26, 2015)

SWAN, *Associate Justice.* Appellant, Cherance Monelle, was charged with five counts of child abuse, three counts of aggravated rape in the first degree, two counts of domestic violence, and one count of unlawful sexual contact in the first degree. After a jury trial, he was found guilty of aggravated rape in the first degree charged as an act of domestic violence and child abuse. For the reasons explicated below, we affirm Monelle's convictions but remand for correction of a minor error in his sentence regarding the obligation that he register as a sex offender pursuant to 14 V.I.C. § 1724.

## I. FACTS AND PROCEDURAL HISTORY

Monelle was alleged to have raped and sexually molested his minor daughter, B.M., over the course of six years. The first sexual encounter

occurred when B.M. was nine years old, when Monelle approached her from behind and began fondling her breast. The second incident occurred two years later when B.M.'s stepmother was temporarily off-island. B.M. testified that she was called into Monelle's bedroom where he proceeded to disrobe her, lay her on the bed, and insert his penis into her vagina. B.M. also testified to performing oral sex on her father during this encounter.

The rapes continued to occur approximately twice per week until B.M. was fifteen years old. As a result, B.M. testified that she became suicidal as the rapes were becoming unbearable and insufferable. However, Monelle secured B.M.'s silence for years by convincing her that, if she told anyone about the rapes, he would go to jail and she would be left without any family member to care for her.

At school, teachers became concerned because B.M. was becoming a truant. In November 2008, a school conference was scheduled with B.M.'s parents to discuss her increasing class absences and unusual academic performance. During the conference, B.M. appeared to become distressed whenever her father spoke. Noticing a change in B.M.'s disposition, a school official requested to speak to B.M. alone. It was during this private conversation that it was uncovered that Monelle had been sexually abusing B.M. for years.

Upon learning this information, school officials contacted the Virgin Islands Department of Human Services ("DHS") and reported the molestation according to school procedure. In dealing with B.M.'s emotional and academic issues shortly after, school officials again contacted DHS because of B.M.'s suicidal inclinations.

DHS assigned a social worker to B.M.'s case. The social worker interviewed B.M. and learned that the rapes started when B.M. was eleven years old and continued approximately twice per week until she was fifteen years old. The sexual assaults would occur in either Monelle's or B.M.'s bedroom.

After receiving this information, the social worker took B.M. to the hospital where she was initially examined by a doctor. The examination confirmed that B.M.'s hymen was not intact, which prompted the doctor to contact the Virgin Islands Police Department to report a possible rape. DHS contacted B.M.'s aunt, and B.M. was placed in her custody commencing November 21, 2008.

Monelle was arrested and charged with committing five counts of child abuse, three counts of aggravated rape in the first degree, two counts of domestic violence, and one count of unlawful sexual contact in the first degree. The Superior Court held a jury trial from May 31, 2011, to June 8, 2011, in which he was found guilty of aggravated rape in the first degree as an act of domestic violence (count nine) and child abuse (count ten). A sentencing hearing was originally scheduled for December 13, 2011, but due to subsequent continuances and substitutions of defendant's counsel, the sentencing hearing did not take place until April 17, 2013. For the conviction on count nine, Monelle was sentenced to fifteen years incarceration and $75 in court costs. On the conviction for count ten, Monelle was sentenced five years of incarceration. The court then ordered that Monelle register as a sex offender upon release from prison. This appeal ensued.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." It is well established that in a criminal case, the written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of this statute. *Williams v. People*, 58 V.I. 341, 345 (V.I. 2013) (collecting cases). Therefore, we have jurisdiction to hear this appeal, which was timely filed on April 30, 2013.

## III. ISSUE AND STANDARD OF REVIEW

On appeal, Monelle propounds the following issues: (A) that the jury instructions were in violation of our decision in *Elizee v. People*, 54 V.I. 466 (V.I. 2010), (B) that the conviction for child abuse must be vacated because the second charging phrase of 14 V.I.C. § 505 is void for vagueness, (C) that there was bias and confusion by the jury regarding the People's DNA evidence, specifically the testimony regarding seminal fluid, (D) that the trial court erred in directing Monelle to register as a sex offender upon his release from prison, and (E) that the prosecutor made inappropriate and prejudicial comments during closing arguments warranting reversal of Monelle's convictions.

The standard of review for this Court's examination of the trial court's application of law is plenary, and its findings of facts are reviewed for

clear error. *Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 371 (V.I. 2013); *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010). Because Monelle did not object to the jury instructions or admission of expert testimony at trial, we review those issues only for plain error. *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011); V.I.S.CT.R. 4(h), 22(m). "For this Court to reverse the Superior Court under the plain error standard of review, there must be (1) an error, (2) that is plain, (3) that affects substantial rights." *Phipps*, 54 V.I. at 546 (citations and internal quotation marks and alteration omitted). "Even then, this Court will only reverse where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Francis v. People*, 52 V.I. 381, 390-91 (V.I. 2009) (internal quotation marks omitted).

## IV. DISCUSSION

### A. The trial court's jury instruction on count nine of the information did not violate this Court's ruling in *Elizee v. People.*

■ Monelle argues that the trial court's jury instructions constituted plain error in regard to count nine of the information, aggravated rape in the first degree in violation of 14 V.I.C. § 1700(a). Because Monelle did not object to the jury instructions at trial, we review his argument only for plain error. V.I.S.CT.R. 4(h). A challenge alleging reversible error in jury instructions must be considered in light of the complete jury instructions and the whole trial record. *Freeman v. People*, 61 V.I. 537, 544 (V.I. 2014); *Burke v. People*, 60 V.I. 257, 264 (V.I. 2013); *Nanton v. People*, 52 V.I. 466, 479 (V.I. 2009). Monelle contends that the Superior Court incorrectly instructed the jury on count nine when it specifically charged:

> To sustain a burden of proof the People must prove each of the following elements beyond a reasonable doubt: One, that defendant perpetrated **repeated acts of sexual intercourse or sodomy with B.M.,** to wit, by inserting his penis into her mouth and vagina. . . .

(Emphasis added).

Monelle cites *Elizee*, 54 V.I. at 479-82, as the leading authority for reversal in this case. In *Elizee*, the information charged the defendant with aggravated child neglect. However, the trial court's instructions permitted the jury to find the defendant guilty if the elements for *either* aggravated

763

child neglect or aggravated child abuse were proven. This Court determined that the trial court erred when it instructed the jury on a charge of aggravated child abuse because it was a distinct offense from the one charged in the information — aggravated child neglect. Because of the error in the jury instructions, we remanded the case for a new trial only on the offense of aggravated child neglect. *Id.* (holding that permitting a jury to find the defendant guilty of a distinct offense from that charged in the information was prejudicial error).

■ Monelle argues that he too was convicted due to erroneous jury instructions similar to the one in *Elizee*. We disagree. While this Court's decision in *Elizee* rejected the practice of submitting a separate offense not charged in the information to the jury, we noted that it is permissible for a jury to hear alternate *modes* of committing the same offense. *Id.* at 479 n.5 ("[T]he Superior Court Charge in this case did not merely allow the jurors to convict Elizee of aggravated child neglect if they found she committed that crime by one of two or more alternative means, but instead allowed the jurors to convict Elizee of a totally different offense than was charged in the Information.").

■■ Here, it is unmistakable from the court's instruction that the jury was given alternate *modes* of committing aggravated rape in the first degree and not two separate offenses in the disjunctive. In stating the offense, section 1700 explicitly includes the language: "an act of sexual intercourse or sodomy." Hence, sexual intercourse and sodomy are merely alternate modes of committing aggravated rape in the first degree. It is clear that Monelle misconstrues the language in the *Elizee* holding by confusing the modes by which an offense may be committed with what constitutes an offense. Importantly, neither the language in the information nor the jury instructions created a new offense for which Monelle was not informed regarding his criminal culpability;[1] therefore,

---

[1] Notably, the information and the jury instructions paralleled each other, as both used the language, "perpetrate **repeated acts of sexual intercourse or sodomy** with a person . . . ." (Emphasis added). *Elizee* hinged on the variance between the charging document and the trial court's instructions. 54 V.I. at 479 ("The variance between the information and the verdict thus violated [the defendant's] right to be notified of the charge against him so that he could adequately defend himself at trial." (quoting *Gov't of the V.I. v. Joseph*, 765 F.2d 394, 398 (3d Cir. 1985))). Here, there was no variance between the charging document and the jury instructions.

Monelle's argument fails under plain error review because there was no error in the jury instructions.

## B. The second charging phrase of section 505 is constitutional as applied to this case.

Monelle argues that 14 V.I.C. § 505 is void for vagueness; therefore, he contends, his conviction must be vacated. Monelle argues that the statute is void because it "requires a person to determine whether it is reasonably foreseeable that a female child being sexually abused would suffer mental and emotional injury." *Gov't of the V.I. v. Ayala*, 853 F. Supp. 160, 161, 29 V.I. 123 (D.V.I. 1993).

The provisions of 14 V.I.C. § 505 impose criminal penalties upon:

> [a]ny person who abuses a child, or **who knowingly or recklessly causes a child to suffer physical, mental or emotional injury**, or who knowingly or recklessly causes a child to be placed in a situation where it is reasonably foreseeable that a child may suffer physical, mental or emotional injury or be deprived of any of the basic necessities of life.

(Emphasis added).

■ Monelle incorrectly relies on *Ayala*, in which the United States District Court of the Virgin Islands declared that the third charging phrase of section 505 was unconstitutionally vague. Here, Monelle is charged under the second charging phrase of the statute, which makes culpable a defendant *who knowingly or recklessly causes a child to suffer physical, mental, or emotional injury*. Even so, this Court is not bound by decisions rendered by the District Court. *See Walters v. Walters*, 60 V.I. 768, 778 (V.I. 2014); *Najawicz v. People*, 58 V.I. 315, 327-28 (V.I. 2013).

■ First, the Supreme Court of the United States has emphasized that, when analyzing a statute, "[o]bjections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988). Requirements under the Due Process Clause are satisfied if the statute at issue affords a "[p]erson of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited." *Brathwaite v. People*, 60 V.I. 419, 434 (V.I. 2014). Secondly,

the void for vagueness doctrine focuses on the constraint·imposed by a statute upon power of the government in enforcement: the law must not be so loosely worded as to encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983).

Notwithstanding the two requirements under the void for vagueness doctrine, in raising a challenge to a statute that does not involve First Amendment freedoms, defendants must first establish standing by demonstrating that the statute is vague as applied to the facts of the particular charge against them. *See United States v. Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975). A person whose conduct unequivocally falls within a statute may not successfully challenge the same statute for vagueness. *Parker v. Levy*, 417 U.S. 733, 756, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974).

■ Here, as in *Brathwaite*, we hold that section 505 is sufficient to put a person of ordinary intelligence on notice that engaging in sexual intercourse with his biological minor daughter may cause her to suffer emotional injury. Importantly, B.M. did receive counseling from a social worker for her emotional issues. Monelle's conduct is so repugnant that any adult in his position would immediately recognize his conduct as child abuse, considering the purposes for which the Child Protection Act of 1992 was enacted. *See* 14 V.I.C. §§ 501 *et seq.* It is undeniable that Monelle's sexual conduct is exactly what legislators intended to proscribe and is clearly the type of conduct that any reasonable person would foresee would result in criminal prosecution.[2] Because Monelle's conduct fell within the realm of behaviors clearly proscribed by section 505, Monelle does not have standing to challenge the statute on the ground of purported vagueness. *Brathwaite*, 60 V.I. at 435; *see McIntosh v. People*, 57 V.I. 669, 687 (V.I. 2012). Therefore, we hold that section 505 is constitutional as applied to the facts of this case.

### C. The trial court did not err in admitting the DNA expert's testimony.

Monelle raises two arguments regarding the admission of the People's expert testimony. First, he argues that the trial court erred in admitting

---

[2] In *Brathwaite*, this Court held that a person of ordinary intelligence would be able to understand that having sexual intercourse with a minor daughter is within the scope of conduct prohibited by the Child Abuse Act. 60 V.I. at 426.

DNA testimony which violated Federal Rule of Evidence 403[3] because it confused the jury and caused unfair prejudice. Secondly, he argues that the trial court abused its discretion in admitting expert testimony on the issue of DNA and seminal fluids.

██ When an issue of improper admission of prejudicial evidence is raised on appeal, we first examine the trial record to determine whether the defendant raised a Rule 403 objection during trial. "[J]udicial restraint is . . . desirable" when reviewing a trial court's ruling under Rule 403. *Francis v. People*, 56 V.I. 370, 385-86 (V.I. 2012); *Powell v. People*, 59 V.I. 444, 464 (V.I. 2013). The failure of the trial court to enter express findings into the record as to the balancing of the probative value and unfair prejudice of certain evidence is not reversible error. While "Rule 403, by [its] own terms, require[s] a trial court to engage in a balancing analysis that weighs the evidence's probative value against the danger for unfair prejudice," *Mulley v. People*, 51 V.I. 404, 411-12 (V.I. 2009), it is sufficient that the balancing decision is supported by evidence in the record. *See generally id.* at 411 n.5 (finding remand for express Rule 403 balancing not required, although noting that "this Court strongly encourages trial courts to articulate with specificity the reasons for all parts of their [Rule 403] decisions in order to facilitate meaningful appellate review"); *see also Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 885 (8th Cir. 2006). Furthermore, "we may not reverse the trial court's determination under Rule 403 . . . unless we find that the court acted arbitrarily or irrationally," *People v. Todmann*, 53 V.I. 431, 442 (V.I. 2010), which has not been confirmed by the trial record in the present case.

██ Here, Monelle failed to raise any Rule 403 objection. When an issue is not properly preserved for appeal, this Court may review only for plain error. We reiterate our earlier plain error analysis as it applies to Monelle's Rule 403 arguments.

 Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

[3] The Virgin Islands Legislature adopted the Federal Rules of Evidence to govern the admission of evidence in the Superior Court on April 7, 2010. 2010 V.I. Sess. Laws 50 (Act No. 7161, § 15(b)).

cumulative evidence." Although statements by witnesses supporting a finding that a defendant is guilty are prejudicial to the interest of the defendant, their probative value is not substantially outweighed by an *unfair* prejudice if they do not "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged," as contemplated by the advisory committee's notes to Rule 403. *Billu v. People*, 57 V.I. 455, 465 (V.I. 2012) (citations omitted); *Mulley*, 51 V.I. at 411-12 (citing *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997)). As we explained in *Mulley*, 51 V.I. at 412 (quoting *United States v. Garner*, 281 Fed. Appx. 571, 575 (7th Cir. 2008)) (internal quotation marks omitted), "[b]ecause all probative evidence is prejudicial to a criminal defendant . . . to warrant exclusion . . . its probative value must be slight in comparison to its inflammatory nature." In contrast, the probative value of the DNA evidence in this case was crucial and compelling in proving the crimes, while the risk of unfair prejudice is negligible because the DNA evidence is specific to the offense charged. Because the probative value of the statements made by both Dr. Noppinger and Detective Lewitt was not substantially outweighed by the danger of unfair prejudice, the Superior Court did not commit error, much less plain error, and properly admitted their statements into evidence.

Additionally, Monelle's arguments directed at Dr. Noppinger's expert testimony are disingenuous. Monelle's only objection to Dr. Noppinger's testimony was that he was not provided with an expert witness report in a timely manner. Monelle's objection prompted the trial court to exclude any evidence from Dr. Noppinger which was not previously disclosed to the defense. However, Monelle now appears to be asking this Court to reverse his conviction because Dr. Noppinger's testimony was limited. Yet the testimony was limited because of objections to Dr. Noppinger's testimony by defense counsel. Ultimately, Monelle's argument fails because the defense stipulated to Dr. Noppinger's expert qualifications. The trial court properly admitted his testimony as an expert witness, and we find no plain error.

### D. The trial judge erred in requiring the Appellant to register after his release from confinement.

Although Monelle never objected to the trial court's application of section 1724 of title 14 of the Virgin Islands Code, we

review his argument as raised on this appeal under the plain error standard. Section 1724 requires a convicted sex offender to register as a sex offender *prior* to his release from prison.[4] Because the judgment and commitment requires Monelle to register as a sex offender *after* his release from imprisonment, we remand this case for a correction to that aspect of his sentencing in conformity with this Court's precedent. *Hightree v. People*, 60 V.I. 514, 532-33 (V.I. 2014). This Court has held that failure to conform to section 1724 is plain error because a convicted defendant's failure to register as a sex offender in accordance with the provisions of the Virgin Islands Code, may result in him being found guilty of a crime under title 14 section 1722(d). *Id.* Monelle asserts that because of the error, the judgment must be reversed. We disagree. The correction of the sentence does not require a new trial because it does not have any impact on the underlying conviction. *Id.*

### E. Comments by the prosecutor did not require a new trial.

 Monelle argues that statements made by the prosecution during closing arguments constituted impermissible vouching and deprived him of his right to a fair trial. At closing, the prosecution stated:

> Dr. Campbell prescribed Cialis. And we know what Cialis is for. It's all over the media. They tell you what Cialis does, what Viagra does. So he's having sex with who? The child. And is using the child because his wife is not performing. She said that to the police when it first happened. . . . So to simply say that there is no evidence is not true. And to say that B.M. lied and the lies worked. I will tell you something. From all that I have seen these years that I have been in this world, lies work for a time. We know about Iraq. We had so much going back and forth that there was weapons of mass destruction and later on we find out maybe there weren't any. They never found any. So lies worked for a time. We heard Bill Clinton say repeatedly, "I didn't have sex with that woman." Lies work for a time. That it finally came out yes, oral sex is sex. So I will submit to you, ladies and gentlemen, if B.M. lies it was the defense obligation to bring evidence before the court to show you that.

---

[4] "A person convicted by the courts of this territory for a covered sex offense and incarcerated or confined in a correctional or juvenile facility or a psychiatric facility within or outside of this territory **must register before being released** from incarceration or detention." 14 V.I.C. § 1724(a)(2) (emphasis added).

The Superior Court sustained Monelle's objection to the last sentence, where the People attempted to shift the burden of proof to the defense. The Superior Court proceeded to immediately give a curative instruction to the jury.[5] Juries are presumed to follow curative instructions. *Frett v. People*, 58 V.I. 492, 508 (V.I. 2013) ("[W]e presume that jurors follow the court's instructions and thus would not have relied on the statement as evidence of Frett's guilt, if they had been so instructed."); *Galloway v. People*, 57 V.I. 693, 711 (V.I. 2012) ("[A]ppellate courts must assume that juries for the most part understand and faithfully follow instructions.") (internal quotations and citations omitted); *United States v. Serrato*, 742 F.3d 461, 466 (10th Cir. 2014).

▮▮ A claim of prosecutorial misconduct during trial requires a court to resolve two questions: whether the prosecutor's comments were in fact improper and, if so, whether the remarks prejudiced the defendant's right to a fair trial. *See Brathwaite*, 60 V.I. at 426; *DeSilvia*, 55 V.I. at 872. After considering the entire trial proceeding, reversal will result if the prosecutorial misconduct infected the trial with unfairness causing the resulting conviction to constitute a denial of due process. *DeSilvia*, 55 V.I. at 873. In analyzing whether reversal is warranted, this Court "consider[s] the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the defendant's conviction." *Mulley*, 51 V.I. at 414 (internal quotation marks and citations omitted). When a jury is given an instruction, including a curative instruction, the presumption is that the jury will follow the instruction. *Francis v. People*, 59 V.I. 1075, 1080 (V.I. 2013); *Ostalaza v. People*, 58 V.I. 531, 555 (V.I. 2013); *Augustine v. People*, 55 V.I. 678, 686 (V.I. 2011).

▮ Here, the People's comments were improper in stating that the defense had an obligation to show that the victim was lying. The People's comments regarding President Clinton, the Iraq War, and the erectile

---

[5] Specifically the Superior Court stated:

Ladies and Gentlemen, the reason why there was an objection, the defense or the defendant has no duty whatsoever. The burden is on the People. Okay. Kindly disregard that remark made as to the defense having any type of burden. The burden is entirely on the People to prove beyond a reasonable doubt and you will hear the instruction when I give the final instructions.

dysfunction drug, Cialis, were also improper because the prosecutor invoked matters that were not a part of the record and sought to appeal to the jury's emotions and possible prejudices. *Francis*, 59 V.I. at 1080.

However, we do not find that the People's comments were so egregious as to constitute a denial of due process. Importantly, the court provided an immediate curative instruction concerning the most outlandish statement made by the prosecution — that Monelle bore the burden to prove that B.M. was lying. The Court also gave a general curative instruction during its final jury instruction — instructing the jurors that their deliberations should not be affected by any bias, passion, or prejudice — which reduced the prejudice from the prosecutor's other improper statements. *Mulley*, 51 V.I. at 415 ("[T]he [trial court's] general instruction reduced any prejudice from the improper remarks in the People's closing argument."). Furthermore, even though the crux of the People's evidence against Monelle was the testimony of B.M., B.M.'s testimony was supported by the testimony of the social worker, who testified of B.M.'s account regarding the first time she was raped by Monelle, which is consistent with B.M.'s trial testimony.

While not overwhelming, the evidence was sufficient to establish that the prosecutor's statements did not influence the jury's verdict, especially considering the specific and general curative instructions provided by the trial court. *See Francis*, 59 V.I. at 1081; *DeSilvia*, 55 V.I. at 874; *Mulley*, 51 V.I. at 415-16. Therefore, we conclude that the prosecutorial misconduct in this case did not constitute a denial of due process.

## V. CONCLUSION

After reviewing the entire record before us and considering the language of the statutes establishing the crimes of rape, child abuse, and unlawful sexual contact, we conclude that there was substantial evidence to find Monelle guilty of all charges. Further, based on that evidence, we conclude that Monelle does not have standing to challenge 14 V.I.C. § 505. The admission of the challenged evidence was not unfairly prejudicial, and the prosecutor's comments were harmless error in light of the overall factual record and jury instructions. Accordingly, the convictions are affirmed. Nonetheless, this case is remanded to the trial court for the sole purpose of correcting the statutory time allowed Monelle to fulfill his sex offender registry requirement pursuant to 14 V.I.C. § 1724.