

**FILED**
May 08, 2026 04:31 PM
ST-2026-CV-00033
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **WAYNE D. CALLWOOD,** ) | CASE NO. ST-2026-CV-00033 |
| ) | |
| Petitioner, ) | PETITION FOR WRIT OF REVIEW |
| ) | |
| -vs- ) | |
| ) | |
| **GOVERNMENT OF THE VIRGIN ISLANDS** ) | |
| **DEPARTMENT OF LICENSING AND** ) | |
| **CONSUMER AFFAIRS and VIRGIN ISLANDS** ) | |
| **BOARD OF ARCHITECTS, ENGINEERS &** ) | |
| **LAND SURVEYORS,** ) | |
| ) | |
| Respondents. ) | |

Cite as 2026 VI SUPER 20U

### MEMORANDUM OPINION AND ORDER

¶1 Pending before this Court are:

1. Petitioner's Petition for Writ of Review, filed January 26, 2026;

2. Petitioner's Brief, filed March 16, 2026; and

3. Respondents' Brief, filed April 28, 2026.

For the reasons set forth below, the Virgin Islands Board of Architects, Engineers & Land Surveyors' Order of January 15, 2026, will be affirmed as it pertains to Petitioner Wayne D. Callwood.

### I. FACTUAL AND PROCEDURAL BACKGROUND

¶2 Petitioner Wayne D. Callwood ("Callwood") seeks judicial review of the Government of the Virgin Islands Department of Licensing and Consumer Affairs and Virgin Islands Board of Architects, Engineers & Land Surveyors' (the "Board" or, collectively, "Respondents") Memorandum of Opinion, Findings of Facts, Conclusions of Law, and Decision and Order, issued on or about January 15, 2026, in *Lawrence Best v. Wayne D. Callwood and Francisco A. Nadal*, Case No. BC-2687-23 (Administrative Complaint No. 2687), 27 V.I.C. § 288 Action for Revocation.

¶3 On or about May 5, 2023, Lawrence Best filed a complaint with the Board against Callwood and Francisco A. Nadal ("Nadal"), entitled Complaint No. 2687/CPS Case No. 2023-

05-007, and the Board held a hearing in response, which occurred on April 11, 2025, and was continued to June 27, 2025. As stated in its Memorandum of Opinion:

> The complaint alleged that Respondent Callwood was contracted to produce a recorded survey, but the final survey bore the stamp of Respondent Nadal, a different surveyor. The core allegation is that Respondent Nadal did not prepare the survey, and that Respondent Callwood, acting as a Public Surveyor, fraudulently submitted and recorded the survey under Respondent Nadal's professional stamp, thereby committing potential fraud and misrepresentation.[1]

The Board stated that:

> The Board heard testimony from Respondent Callwood, who testified that he works at the Lieutenant Governor's Office as the Public Surveyor and he has degrees in civil engineering and surveying. With respect to Parcel 13Ba-3, Respondent admitted that it was a survey done bm [sic]; that the initials cc are his initials and it meant that the survey was checked by him and that the seal was Respondent Nadal's seal. When asked if he placed the seal on the survey, Respondent Callwood responded that it was a computer-generated seal that goes on all surveys and that it was placed there by him. Respondent Callwood testified that both he and Respondent Nadal jointly did the survey of Parcel 13Ba-3. Respondent Callwood testified that Respondent Nadal has two seals; one for surveying and one for when he's doing his personal engineering work.[2]

As a result of the hearing,[3] the Board stated that:

> Additionally, Respondent Nadal testified that he had not been to the site known as Parcel 13Ba-3; that he had not been to Cadastral to look at the map for Estate Hard Labor; was not aware of the make and model of the satellite location system used; did not know the accuracy rate of the satellite information system used; did not review Respondent Callwood's field notes; and did not have photographs or other documentary evidence of bound posts found by Respondent Callwood . . . .[4]

The Board stated: "Nadal also testified that he did not prepare surveys for Carolina Parcel 8-4-14-1, or 126A or 126B Estate Chocolate Hole."[5] The Board wrote that "Respondent Nadal testified that Respondent Callwood does the surveying work (all of the field work) and he does the engineering part and signs."[6] Notably, the Board found that:

---

[1] Certified R. of Admin. Proc., DLCA000001.

[2] Certified R. of Admin. Proc., DLCA000003.

[3] The Board also heard testimony that at least one survey completed by Callwood had alleged inaccuracies, but "the Board was not in a position to discuss the accuracy of any survey." DLCA000002.

[4] Certified R. of Admin. Proc., DLCA000003.

[5] Certified R. of Admin. Proc., DLCA000003.

[6] Certified R. of Admin. Proc., DLCA000004.

Specifically, Respondent Nadal permitted his professional seal to be used by Respondent Callwood on surveys intended for official recording. Although Respondent Callwood held the necessary license to prepare such surveys, he was required by law and professional standards to affix his own signature and seal to each survey prior to filing. However, as the Public Surveyor, Respondent Callwood faced a clear conflict of interest in signing and sealing the surveys himself. To circumvent this ethical and legal requirement, he instead used Respondent Nadal's seal—either with or without Nadal's explicit knowledge.

Nevertheless, Respondent Nadal was aware of this misuse. He admitted to knowledge of Respondent Callwood's actions in his response to Mr. Wisehart and further evidenced this awareness by allowing Respondent Callwood to review his draft response to the Complaint. Additionally, Respondent Nadal admitted that he had not visited the sites for the surveys completed by Respondent Callwood, further underscoring his lack of professional oversight and direct involvement.[7]

¶4     The Board found that Callwood (and Nadal) "violated 27 VIC § 286(b) by Respondent Nadal allowing Respondent Callwood to use Respondent Nadal's Professional Engineer stamp on surveys that Respondent Nadal had not reviewed or supervised in any way."[8] The Board found Callwood "[g]uilty of engaging in activities constituting misconduct in the practice of engineering" and that he "failed to maintain the integrity and high standards of skill and practice of engineering profession."[9]

¶5     On or about January 15, 2026, the Board ordered, *inter alia*, that: Callwood's professional license suspended immediately for a period of six (6) months; Callwood take an eight (8) hour ethics course prior to the end of the suspension period; and Callwood must serve a one (1) year probationary period after the six (6) month suspension period has been lifted. On January 26, 2026, Callwood, *pro se*, filed before this Court the Petition for Writ of Review. Subsequently, in March and April of 2026, Callwood and Respondents filed their respective briefs. Callwood seeks to have this Court vacate the Board's ruling and remand with instructions to dismiss the case against him and restore his license, and Respondents seek to have this Court affirm the Board's ruling.

## II. LEGAL STANDARD

¶6     This Court, when evaluating a writ of review, has the "power to affirm, modify, reverse, or annul the decision or determination reviewed, and, if necessary, to award restitution to the plaintiff, or, by mandate, direct the officer, board, commission, authority, or tribunal to proceed in the matter reviewed according to its decision."[10] "Upon each appeal all findings, decisions, or determinations by the Board as to questions of fact shall be deemed final in the absence of conclusive showing to the Court of fraud or arbitrariness."[11] However, the Court will exercise plenary review concerning

---

[7] Certified R. of Admin. Proc., DLCA000005.
[8] Certified R. of Admin. Proc., DLCA000001.
[9] Certified R. of Admin. Proc., DLCA000006.
[10] V.I. CODE ANN. tit. 5, § 1423.
[11] 27 V.I.C. § 288(d).

legal findings, statements of law, and the application thereof.[12]

## III. ANALYSIS

¶7    As a preliminary matter, the Board had statutory authority over this matter under Title 27 as the issue concerned misconduct with licenses. Under 27 V.I.C. § 282a, the Board is empowered to "issue, suspend, revoke, refuse to renew, or reinstate licenses as provided in this chapter."[13] Additionally, the Board "may suspend, refuse to renew, or revoke the license of any licensee who, after due notice and hearing by the Board, is found guilty of" any "gross negligence, incompetence, or misconduct in the practice of architecture, engineering, or land surveying."[14]

### A. The participation of the Board Member at the hearing.

¶8    At the center of one of Callwood's arguments is the involvement of Board Member Ryan Wisehart ("Wisehart") during the hearing. In the Board's Memorandum, the Board discussed how the Board heard testimony from Wisehart and that Wisehart would recuse himself from voting. The Board wrote:

> The Board heard testimony from Mr. Ryan Wisehart regarding an email he sent to Complainant on October 16, 2020, indicating that Respondent Nadal was stamping Respondent Callwood's survey and that he had an email from Respondent Nadal admitting to doing it. Mr. Wisehart emailed Respondent Nadal on June 10, 2019, asking him if he was stamping surveys for Respondent Callwood. On June 12, 2019, Respondent Nadal responded yes to Mr. Wisehart.[15]

¶9    First, Callwood argues that Wisehart's involvement in the hearing was improper as it allegedly denied him the constitutional guarantee of due process through a fair trial with an impartial judge and infringed upon his property interest. In his Brief, Callwood states:

> Although, the Board claimed that Wisehart would recuse himself from voting, the damage was already done; Wisehart's partiality affected the whole Board as the Board entertained Wisehart's beliefs, views, perceptions and mindset during the Board's conferences and discussions. Thus, whether Wisehart voted or not, his influence help shaped the Board's decision. As a matter of fact, Wisehart's attendance at the time of the vote and whether he voted are mysteries to all except the Board. This enigma could have been avoided if the Board had just recuse Wisehart and remove him for the panel . . . .[16]

¶10    Second, Callwood argues that the Board abused its discretion by allowing Wisehart to

---

[12] V.I. R. CIV. P. 91(i); *see Milligan v. Gov't of the Virgin Islands*, No. SX-00-CV-443, 2015 WL 7424018, at *2 (Super. Ct. Nov. 18, 2015); *see Bryan v. Fawkes*, 61 V.I. 201, 223–228 (V.I. 2014).

[13] 27 V.I.C. § 282a(f)(4).

[14] 27 V.I.C. § 288(a)(2).

[15] Certified R. of Admin. Proc., DLCA000003.

[16] Pet'r's Br. 6.

participate in the proceedings. "The Board's action to allow Wisehart to remain seated as part of the adjudicatory panel, over the objection of Petitioner's counsel for recusal, was arbitrary and irrational as it failed to consider Petitioner's right to a fair and impartial hearing, a judicially recognized factor, especially knowing that Wisehart would be called as a witness to give testimony against Petitioner."[17]

¶11     In response, the Respondents first argue that Wisehart's participation in the hearing and presence on the panel is not a basis for reversal. For instance, under 27 V.I.C. § 288(d), findings and decisions by the Board concerning questions of fact are deemed final in the absence of conclusive showing of fraud or arbitrariness. Here, Respondents claim that Callwood has alleged "neither fraud nor arbitrariness" and that Callwood's argument concerning Wisehart is not properly based upon the governing standard.[18] Second, Respondents argue that Wisehart's testimony did not require his removal from the panel because his testimony concerned facts Nadal and Callwood stated in their own testimony. For instance, Respondents claim that "Wisehart's testimony was not needed" to support the establishment of the charge and that "Nadal and Callwood admitted the predicate misconduct."[19] "Nonetheless, Wisehart took the prophylactic measure of recusing himself from voting."[20] Third, Respondents argue that even if any error occurred (and they claim no error occurred), such error was harmless as it did not impact Callwood's substantial rights.

¶12     This Court finds that Wisehart's involvement did not deny Callwood of his constitutional guarantee of due process. Wisehart did not act as a fact finder in this case as he did not vote. Callwood asserts that Wisehart influenced the entire Board and its decision. But Wisehart's testimony proved unnecessary in light of the total evidence presented before the Board. Wisehart's involvement did not impact Callwood's rights as the Board based its independent decision upon the evidence presented at the hearing.[21] Lastly, abuse of discretion is not the correct standard in this case, and Callwood has not made a conclusive showing to the Court of fraud or arbitrariness as to the Board's findings of fact.

**B. Application of 27 V.I.C. § 286(b).**

¶13     At the center of Petitioner's other arguments is 27 V.I.C. § 286(b), which states:

> (b) Each licensee hereunder shall, upon receipt of his license, obtain a seal of the design authorized by the Board, bearing the licensee's name and the legend 'Architect', 'Engineer', or 'Land Surveyor', as the case may be. Plans, specifications, reports, maps, plats, surveys, or other documents prepared by the licensee shall, when issued for filing with public authorities, be signed and stamped with the said seal. It shall be unlawful for an architect, engineer, or land surveyor to affix, or permit his seal to be affixed, to any plans, specifications, reports, maps,

---

[17] Pet'r's Br. 7.

[18] Resp'ts' Br. 7.

[19] Resp'ts' Br. 8.

[20] Resp'ts' Br. 8.

[21] *See Williams v. Pennsylvania*, 579 U.S. 1, 8, 136 S. Ct. 1899, 1905, 195 L. Ed. 2d 132 (2016).

plats, surveys, or other documents after expiration of a license or for the purpose of aiding or abetting any other person to evade or attempt to evade any provisions of this chapter.

¶14 Callwood claims that the "Board committed clear error in its findings of fact that the surveyors aided or abetted to evade or attempted to evade the provisions of Chapter 8, Title 27 of the V.I. Code."[22] Callwood argues that his actions were lawful and that the "Board's finding of misconduct was not an objective view of the facts" and that the Board sought to "stretch the facts" to depict Callwood's and Nadal's actions "as nefarious."[23] For instance, Callwood states how it was not unlawful for him to prepare private survey maps outside of his government job as public surveyor. Callwood and Nadal had known each other for over thirty years, and "the two surveyors working and collaborating for over thirty years with each other in performance to better serve their clients does not rise to the level of aiding or abetting to evade or attempt to evade any provisions of Chapter 8 of Title 27."[24]

¶15 In response, first, Respondents argue that: "Callwood does not contest the Board's factual findings, with one exception: Callwood insists that it was not misconduct because it was not unlawful for him to use Nadal's seal."[25] Respondents emphasize that Callwood is incorrect when Callwood argues that no law exists prohibiting public surveyors from performing private work. Instead, Respondents argue that many laws exist that address conflicts of interest, including for public officials, and Callwood had a conflict of interest but used Nadal's seal to obscure that conflict of interest.[26] Second, Respondents state how Callwood knew that he and Nadal were licensed and that each possessed their own seals. "When Callwood used Nadal's seal for surveys Callwood had prepared for filing with public authorities, he broke the law."[27] Respondents claim that this alone is sufficient to support the Board's finding that Callwood engaged in misconduct in the practice of land surveying.

¶16 Pursuant to the standard set forth in 27 V.I.C. § 288(d), this Court finds that Callwood has not made a conclusive showing to this Court of fraud or arbitrariness. For instance, Callwood does not contest the Board's finding that: (1) Callwood used Nadal's seal on at least one survey, (2) Callwood and Nadal were aware of Callwood's use of Nadal's seal, and (3) Nadal lacked direct involvement in the surveying and did not visit the sites for the surveys completed. The Board found that Callwood had admitted to intentionally using Nadal's seal.[28] Callwood claims that Callwood and Nadal had worked and collaborated with each other for over thirty years and that a public surveyor can do private survey work. But, in this specific case, the Board found that Nadal did not extensively review or examine the surveys prepared by Callwood, but Callwood still utilized Nadal's seal.[29] This Court finds that Callwood acted unlawfully by using Nadal's seal because,

---

[22] Pet'r's Br. 9.

[23] Pet'r's Br. 9.

[24] Pet'r's Br. 9.

[25] Resp'ts' Br. 5.

[26] Resp'ts' Br. 5.

[27] Resp'ts' Br. 6.

[28] DLCA000003-DLCA000004.

[29] *See, e.g.*, DLCA000141-DLCA000143.

under 27 V.I.C. § 286(b), when an individual licensee alone completes a survey, that individual is required to use his own seal on his survey.[30] The Board also stated that, as the Public Surveyor, "Callwood faced a clear conflict of interest in signing and sealing the surveys himself" and that Callwood instead used Nadal's seal.[31] This Court finds no reason to disturb this specific finding. Given the facts of this case, this Court finds that the Board did not err in its findings of misconduct and that Callwood violated 27 V.I.C. § 286(b).

## C. The void for vagueness doctrine.

¶17    Callwood argues that 27 V.I.C. § 289(3) and 27 V.I.C. § 286 are unconstitutional under the void for vagueness doctrine. 27 V.I.C. § 289(3) states that any person who "presents or attempts to use the license or seal of another" shall "be guilty of a misdemeanor and may, upon conviction, be fined not more than $2,000 or imprisoned not more than one year, or both."[32] In *Codrington v. People*, the Supreme Court of the Virgin Islands stated that:

> "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Therefore, a statute "is unconstitutionally vague if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'"[33]

"[I]f a reasonable person 'would know that their conduct puts them at risk of punishment under the statute' then a challenge for vagueness can be overcome."[34] But in *Monelle v. People*, the Supreme Court of the Virgin Islands stated:

> Notwithstanding the two requirements under the void for vagueness doctrine, in raising a challenge to a statute that does not involve First Amendment freedoms, defendants must first establish standing by demonstrating that the statute is vague as applied to the facts of the particular charge against them. *See United States v. Mazurie*, 419 U.S. 544, 550 (1975). A person whose conduct unequivocally falls within a statute may not successfully challenge the same statute for vagueness. *Parker v. Levy*, 417 U.S. 733, 756 (1974).[35]

¶18    Callwood claims that 27 V.I.C. § 286(b) and 27 V.I.C. § 289(3) are opposite of each other

---

[30] *See Utesch v. Atlas Motor Inns, Inc.*, 687 F.2d 20, 26 (3d Cir. 1982).
[31] Certified R. of Admin. Proc., DLCA000005. Callwood denied any conflict of interest, but when asked about why he did not stamp his own work, Callwood replied: "Because I'm the public surveyor and that would shed a cloud over me doing something like that." Certified R. of Admin. Proc., DLCA000143.
[32] 27 V.I.C. § 289(3).
[33] *Codrington v. People*, 57 V.I. 176, 187 (2012) (citations and footnote omitted).
[34] *People v. Henderson*, 2022 VI SUPER 74U, ¶ 4 (Super. Ct. Aug. 19, 2022) (citing *Brathwaite v. Virgin Islands*, 60 V.I. 419, 434 (2014)).
[35] *Monelle v. People*, 63 V.I. 757, 766 (2015).

and that 27 V.I.C. § 286(b) and 27 V.I.C. § 289(3) are confusing for surveyors as to how the two statutes correlate to each other. Callwood asserts that: "Under 286(b) a signing or sealing done without evading or attempting to evade is not unlawful while under 289(3) any signing or sealing is unlawful."[36] Callwood states that 27 V.I.C. § 289(3) encourages arbitrary and discriminatory enforcement. For instance, Callwood claims that 289(3) encourages discriminatory enforcement between surveyors employed in firms and individual surveyors not employed by firms because two or more surveyors in a firm could "collaborate with each other and place their respective seals on each another surveys" while individual licensed surveyors not employed by firms (or partnerships) "are easily conspicuous to be detected for infractions by law enforcers under this section."[37] Callwood also claims that "Section 286(b) mirrors the same scenario as 289(3) as it encourages discriminatory enforcement" among surveyors.

¶19    In response, Respondents argue that Callwood's argument concerning the void for vagueness doctrine fails for at least three reasons. First, Respondents claim that 27 V.I.C. § 286(b) and 27 V.I.C. § 289(3) are not opposite as they are directed to different types of misconduct. Second, Respondents argue that Callwood lacks standing to challenge 27 V.I.C. § 289(3). For instance, citing *People v. Aponte* (which concerns the firearm regulatory scheme), Respondents argue that this case does not involve the application of 27 V.I.C. § 289(3) to Callwood and that statute is not at issue.[38] Additionally, Respondents state that "collaboration is not at issue here" so Callwood "lack[s] standing to challenge § 286(b) as void for vagueness."[39] Third, Respondents argue that "[o]n its merits the §§ 286(b) and 289(3) challenge would fail."[40] For instance, Respondents argue that the two statutes give a person of ordinary intelligence fair notice of what is prohibited and that Callwood has not highlighted any impermissible delegation of basic policy, which is needed to demonstrate discriminatory enforcement. Instead, Respondents state that Callwood's "argument is only that it would have been more difficult to detect his misconduct if he had partnered in a firm with Nadal. This is not the basis of a valid constitutional challenge."[41]

¶20    This Court finds that 27 V.I.C. § 289(3) is irrelevant to this case. The Board found that Callwood violated 27 V.I.C. § 286(b), but the Board did not base its decision upon 27 V.I.C. § 289(3). Other than *Freeman v. People* (concerning 14 V.I.C. § 625(a)), Callwood presents no authority to support his argument.[42] Therefore, this Court will decline Callwood's invitation to review the constitutionality of 27 V.I.C. § 289(3).

¶21    Next, it is not fully clear in Callwood's Brief whether he is claiming both 27 V.I.C. § 289(3) and 27 V.I.C. § 286(b) are unconstitutional or only 27 V.I.C. § 289(3). Callwood only expressly claims that 27 V.I.C. § 289(3) is unconstitutional but later states that "Section 286(b) mirrors the same scenario as 289(3)."[43] If Callwood is also challenging 27 V.I.C. § 286(b) as

---

[36] Pet'r's Br. 10.

[37] Pet'r's Br. 11.

[38] *People v. Aponte*, 78 V.I. 16, 2023 VI SUPER 51 (Super. Ct. 2023).

[39] Resp'ts' Br. 11.

[40] Resp'ts' Br. 10.

[41] Resp'ts' Br. 11.

[42] *Freeman v. People*, 61 V.I. 537, 545 (2014).

[43] Pet'r's Br. 11.

unconstitutionally vague, then it is worth noting that the void for vagueness doctrine is often argued in the context of criminal statutes, but 27 V.I.C. § 286(b) is not a criminal statute.[44] However, the void for vagueness doctrine "has been extended to civil cases" and a lesser degree of specificity is generally required in a civil context than with criminal contexts.[45] Assuming Callwood is challenging 27 V.I.C. § 286(b) as unconstitutional, this Court will extend the analysis in this case to 27 V.I.C. § 286(b) even though it is not a criminal statute.

¶22 This Court finds that 27 V.I.C. § 286(b) is not vague as applied to the facts of the allegations against Callwood and he lacks standing for this challenge. In this case, the Board found that Callwood prepared the surveys but used Nadal's seal instead of his own seal. 27 V.I.C. § 286(b) plainly indicates that each licensee shall obtain a seal bearing the licensee's name and that surveys "prepared by the licensee shall, when issued for filing with public authorities, be signed and stamped with the said seal."[46] Additionally, the civil statute states: "It shall be unlawful for an architect, engineer, or land surveyor to affix, or permit his seal to be affixed, to any plans, specifications, reports, maps, plats, surveys, or other documents after expiration of a license or for the purpose of aiding or abetting any other person to evade or attempt to evade any provisions of this chapter."[47] Also, a lesser degree of specificity is required in the civil context with 27 V.I.C. § 286(b). Callwood completing the surveying work alone and using Nadal's seal violated 27 V.I.C. § 286(b) and constituted misconduct.

¶23 Callwood's main argument concerning 27 V.I.C. § 286(b) compares the facts of this case to a separate situation (not at issue) with licensed surveyors potentially collaborating together within a firm, allegedly resulting in discriminatory enforcement. But Nadal did not actively participate in the surveying work with Callwood. Callwood's hypothetical is separate from the facts of this case, and 27 V.I.C. § 286(b) pertains to Callwood's conduct at issue. As this Court has previously held:

> When the options before the Court are a plain and straightforward reading of a statute that results in a rational, easy-to-understand scheme, or an intricate and convoluted reading of a statute that results in an irrational and unworkable scheme, the answer is simple, do not do the latter.[48]

Callwood's conduct fell within the bounds of what was clearly proscribed by the statute.[49] As

---

[44] *Donastorg v. Gov't of Virgin Islands ex rel. Departments & Agencies & its Comm'rs & Directors*, No. CIV. 20/1998, 2003 WL 21653354, at *6 (Terr. V.I. June 24, 2003) ("The Supreme Court, however, has recognized that a non-criminal statute is unconstitutionally vague under the due process clause, where its language does not convey sufficiently definite warning as to the proscribed conduct, when measured by common understanding and practices . . .").

[45] *People of Virgin Islands v. Thomas*, 53 V.I. 319, 331 n.16 (V.I. Super. 2010) (citing *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982)).

[46] 27 V.I.C. § 286(b).

[47] 27 V.I.C. § 286(b).

[48] *People v. Clendinen*, 2024 VI SUPER 33U, ¶ 15 (V.I. Super. Sept. 26, 2024).

[49] *See LeBlanc v. People*, 56 V.I. 536, 541 (2012) (citation omitted); *see Gonsalves v. People*, 70 V.I. 812, 843 n.19 (2019) (citations omitted).

such, Callwood lacks standing to challenge the statute on the ground of purported vagueness.[50]

## IV. CONCLUSION

¶24    For the foregoing reasons, this Court will affirm the Board's Order of January 15, 2026, as it pertains to Callwood.

Accordingly, it is hereby

**ORDERED** that the Government of the Virgin Islands Department of Licensing and Consumer Affairs and Virgin Islands Board of Architects, Engineers & Land Surveyors' Memorandum of Opinion, Findings of Facts, Conclusions of Law, and Decision and Order, issued on or about January 15, 2026, in *Lawrence Best v. Wayne D. Callwood and Francisco A. Nadal*, Case No. BC-2687-23 (Administrative Complaint No. 2687), 27 V.I.C. § 288 Action for Revocation is **AFFIRMED solely as it pertains to Wayne D. Callwood**; and it is further

**ORDERED** that a copy of this Memorandum Opinion and Order shall be mailed to Wayne D. Callwood at P.O. Box 304126, St. Thomas, VI 00803; and a copy thereof directed to Assistant Attorney General Daniel Morris.

DATED: **5/8/26**

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
for **DONNA D. DONOVAN**
Court Clerk Supervisor **5** / **11** / **2026**

---

[50] *See Henderson*, 2022 VI SUPER 74U, ¶ 8.